JOHN BALAZS, Bar # 157287
Attorney at Law
916 2nd Street, Suite F
Sacramento, CA 95814
Telephone: (916) 447-9299
balazslaw@gmail.com

KYLE KNAPP, Bar #166587
Attorney at Law
916 2nd Street, Second Floor
Sacramento, CA 95814
Telephone: (916) 441-4717
kyleknapp@sbcglobal.net

Attorneys for Defendant
MATTHEW ROBERT ALLISON

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>MATTHEW ROBERT ALLISON,<br><br>Defendant. | Case No. 2:24-CR-00257-DC<br><br>**DEFENDANT MATTHEW ROBERT ALLISON'S REPLY TO OPPOSITION TO MOTION TO DISMISS**<br><br>***(defendant's appearance waived)***<br><br><u>Motion Hearing:</u><br>Date: November 14, 2025<br>Time: 9:30 a.m.<br>Hon. Dena M. Coggins |

## I.      Introduction

Defendant Matthew Allison, through counsel, replies to the government's opposition (ECF No. 83) to his motion to dismiss for violation of the Sixth Amendment right to counsel.  ECF No. 81.  The government attempts to reframe the issue underlying the motion to dismiss as simply a complaint about delayed

payments of counsel. Contrary to the government's contention that no structural or constitutional violation arises from systematic non-payment of CJA counsel and their service providers, the Sixth Amendment's guarantee of effective assistance of counsel is rendered illusory when the government deprives the defense of necessary resources to explore potential defenses and adequately defend against serious charges against the defendant. The integrity of the criminal justice system is undermined when only one side to the adversarial system suffers chronic and long-term non-payment for professional services. The resulting asymmetry--where the prosecution maintains its ability to retain and use experts, investigators, and paralegals while the defense does not--offends our adversarial system of justice and fundamental principles of due process and a fair trial.

Yesterday, the Senate passed a continuing appropriations act that purports to end the government "shutdown" and fund the government through January 30, 2026. The House is scheduled to vote on the bill as early as tomorrow, November 12. At this time, counsel does not know whether the appropriations act will be signed into law or whether it will provide sufficient CJA funding to adequately fund the defense in this case. As a result, Mr. Allison replies to the government's opposition below but recognizes that the facts underlying this motion may change and require supplemental argument at Friday's hearing.

## II.    The government inaccurately claims that both sides are subject to equivalent non-payment issues.

The government claims that defense counsel are guaranteed payment and both sides face equivalent non-payment issues since government counsel has also not been paid its salary since mid-October 2025. *See* ECF No. 83, at 5 ("If government counsel were being paid during the shutdown while defense counsel

were not, this argument might have purchase.  But that is not the case.").  This is inaccurate and wrongly suggests that CJA counsel and the prosecution are on a level playing field.  They are not.

First, CJA funding was depleted in early July 2025 when defense counsel and their service providers stopped being paid for representing their clients.  On the other hand, government counsel and their agents, experts, and other staff continued being paid during this period.

Second, the government's argument that "prosecutors aren't being paid either" since the shutdown started October 1 is misleading and fundamentally misunderstands the constitutional violation.  The issue is not whether individual prosecutors receive paychecks on schedule—the issue is whether the government has created a structural imbalance in the adversarial system by maintaining full support for prosecution while systematically defunding defense. The answer is unequivocally yes.  Federal prosecutors are designated as "excepted employees" who continue working during shutdown, guaranteed by statute to receive full back pay for all hours worked [31 U.S.C. § 1341 (Government Employees Fair Treatment Act of 2019)], back pay typically received within days or weeks of the shutdown ending. They face no uncertainty about whether they will be compensated and maintain access to full institutional resources during the shutdown (FBI agents, investigators, and support staff).

CJA defense counsel, on the other hand, are not government employees, have no statutory guarantee of back pay, enjoy no certainty about when or if compensation will be provided, and cannot access necessary resources to provide adequate representation (experts, investigators, and paralegals), must personally pay for all business overhead and expenses, and enjoy no federal benefits.

These situations are not equivalent. Moreover, even if prosecutors and defense counsel faced identical financial hardship (which they do not), that would not cure the constitutional violation. The Sixth Amendment does not require that prosecutors and defense counsel suffer equally. It requires that defendants receive effective assistance of counsel. When the government creates conditions making that impossible, the Constitution is violated regardless of prosecutors' circumstances.

### III.    Judge Shubb's *Vasquez* opinion is an outlier that ignores the modern realities of federal criminal defense practice.

To support its position, the government cites Judge Shubb's order denying a similar motion to dismiss in *United States v. Vasquez,* E.D. Cal. No. 2:25-CR-0135-WBS. For the reasons stated in the attached joint reply brief filed in *United States v. Ayala,* No. 2:23-CR-271-DC, which is also set for argument on the same calendar as Mr. Allison's motion to dismiss, the *Vasquez* decision is wrongly decided.[1] Its holding that there is no constitutional right to compensation for court-appointed counsel harkens back to an era some sixty years ago shortly after *Gideon v. Wainwright,* 372 U.S. 335 (1963), when private counsel were appointed, sometimes pro bono, to a single criminal case. Decades later, cell phones, social media, GPS location data, wiretaps, and vast data storage devices are common place, leading to an explosion in discovery and placing much more substantial demands on criminal defense counsel, including the need to retain a team consisting of paralegals, investigators, and various experts. It is not simply an issue of delayed compensation. Rather, adequate funding of a defense team is necessary for the adversarial system to function properly. Although counsel is not

---

[1]    Mr. Allison adopts the points and authorities in the *Ayala* reply brief rather than repeating them herein.

aware of another final order yet, other judges in this district have rightly questioned the *Vasquez* decision at oral argument, asking for further briefing or taking the motion under submission.  It should not be followed here.

**IV.    Even if the Court does not dismiss the action with prejudice, it should consider lesser remedies, including dismissal without prejudice or releasing the defendant until adequate CJA funding is reestablished.**

In *Betschart v. Oregon,* 103 F.4th 607, 620-22 (9th Cir. 2024), the Ninth Circuit affirmed the district court's injunction ordering the release of all defendants not provided counsel within seven days of arraignment due to Oregon's chronic underfunding of appointed counsel.  In doing so, the Court recognized that appointed attorneys provide critical services throughout the criminal process, including investigating potential lines of defense; advice about the immigration consequences of a criminal conviction, if applicable; ensuring a defendant is competent to stand trial; communicating and advising about plea offers and guidance throughout the plea bargaining process; and advice about waiving certain rights as part of a plea agreement or otherwise.  *Id.* at 620-22.  As the Ninth Circuit explained, "[t]he Sixth Amendment is not a jack-in-the-box that occasionally appears when cranked."  *Id.* at 622.

Even if the Court does not dismiss the Indictment against Mr. Allison with prejudice, the Court should consider other lesser remedies, such as either dismissing the action without prejudice or temporarily releasing the defendant pending trial until consistent CJA funding is provided that satisfies Sixth

Amendment requirements.[2]

**V. Conclusion**

For these reasons and those in his initial motion, the Court should dismiss the Indictment against Mr. Allison or provide another adequate remedy to address the Sixth Amendment violation here.

Respectfully submitted,

Dated:  November 11, 2025

/s/ Kyle Knapp
KYLE KNAPP

/s/ John Balazs
JOHN BALAZS

Attorneys for Defendant
MATTHEW ROBERT ALLISON

---

[2]    Although it is not necessary to go into detail here for the purposes of this motion, the defense disagrees with the government's contention that Mr. Allison poses any danger to the community or flight risk.  The allegations against him consists of posting memes and other items in Telegram channels and chats that constitute speech protected by the First Amendment, even if such speech advocates for or incites others to commit unlawful acts at some indefinite time in the future. *See, e.g., Ashcroft v. Free Speech Coalition,* 535 U.S. 234, 253 (2002) ("The mere tendency of speech to encourage unlawful acts is not a sufficient reason for banning it."); *Hess v. Indiana,* 414 U.S. 105, 108 (1973) (holding the government may not criminalize speech for inspiring crimes "at some indefinite future time"); *Wurtz v. Risley,* 719 F.2d 1438, 1441 (9th Cir. 1983) ("The mere fact that communication induces or 'coerces' action in others does not remove it from *first amendment* protection.") (quoting *Claiborne Hardware Co.*, 458 U.S. 886, 911 (1982)).