HEATHER E. WILLIAMS, Bar No. 122664
Federal Defender
NOA EVA OREN, Bar No. 297100
Assistant Federal Defender
801 I Street, 3rd Floor
Sacramento, CA  95814
Tel: (916) 498-5700
Fax: (916) 498-5710

Attorney for Defendant
DALLAS ERIN HUMBER

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | ) | Case No. 2:24-CR-00257-DJC |
|---|---|---|
| Plaintiff, | ) | **FORMAL OBJECTIONS AND SENTENCING MEMORANDUM** |
| vs. | ) | |
| DALLAS HUMBER, | ) | Date: December 5, 2025 |
| Defendant. | ) | Time: 9:30 A.M. |
|  | ) | Judge: Hon. Dena Coggins |

## INTRODUCTION

Dallas Erin Humber submits this sentencing memorandum for the Court's consideration prior to accepting her plea and imposing sentence in the above case.  Ms. Humber respectfully requests that the Court accept the plea deal, sustain her objections, and impose a sentence of 25 years, which constitutes the low end of her sentencing range pursuant to the plea agreement at Dkt. 72.

A 25-year sentence accounts for the seriousness of the offense conduct, while also acknowledging Ms. Humber's profoundly brutal and multi-faceted trauma chronicled in her 46-page social history, which is attached for the Court's review.  *See* Dkt. 88 (Def. Exh. B).  As noted by probation at Dkt. 88 ¶ 195, a guideline sentence in this case does not account for the extreme physical, emotional, and verbal abuse Ms. Humber has experienced.

While Ms. Humber has managed to survive years of violence, she has not emerged unscathed.  Perhaps unsurprisingly, the horrific and violent experiences Ms. Humber has endured

at the hands of those closest to her have led her to a place of self-hatred and self-sabotage and she finds a sense of self-worth and social belonging through others.  According to Deeyah Khan, a documentary filmmaker who has explored communities of hate, and specifically white nationalism in the United States, "[a] lack of human connection is a huge driver of the people in both movements [jihadis and white supremacists]… and the hate groups and religious extremists deliberately set out to woo members by filling the gap."  *See* https://www.weforum.org/stories/2018/08/muslim-director-neo-nazis-extremists-deeyah-khan/.  Ms. Humber has specifically found herself belonging in groups centered around hateful ideologies.  This is not uncommon among people who have experienced rejection and violence from those closest to them.  *Id*.  As noted by Esther Prins, people typically join extremist groups because the "group meets one or more of their core needs, such as belonging, affirmation, or recognition" and what motivated the person to join the group "provides clues about how to extricate them and which core needs must be fulfilled."  Esther Prins*, Unlearning and Deradicalizing from White Christian Nationalism: Implications for Adult Learning and Education.* New Directions for Adult and Continuing Education, 2025, 2025:67-74, 69 https://doi.org/10.1002/ace.20567 *(internal quotations and citations omitted).*

      Ms. Humber is not beyond hope.  According to Khan (and the literature on the subject), it *is* possible to renounce such hatred.  From Khan's conversations, the most effective and powerful tools to defuse such hatred towards oneself and others are connecting and forming relationships with a person from outside the group that challenges a belief about the hated outsider.  Indeed, a hate-group member's engagement with outsiders had the power to transform that member's outlook and see humanity in people that the group purportedly wished to destroy.  *See* https://www.kanopy.com/en/product/white-right-meeting-enemy.  Unlearning hate and fostering deradicalization is a "dynamic process shaped by a multitude of interacting push/pull factors, sunk costs and the perceived availability of alternatives outside the group."  Prins, *Unlearning and Deradicalizing From White Christian Nationalism: Implications for Adult Learning and Education,* 69 *(internal quotations and citations omitted).* One of the most powerful factors that may pull a person away from violent, extremist ideology was social relationships which pulled

the person away from the group, i.e. establishing a sense of belonging to a new, non-hateful group. *Id*. at 70 and Windisch, S., Simi, P., Ligon, G.S., & McNeel, H. (2016) *Disengagement from Ideologically-Based and Violent Organizations: A Systematic Review of the Literature*. Journal for Deradicalization, 9, 1-38, at 15.

      To be sure, removing oneself from an extremist community requires sustained relationship building outside the extremist group. *See*, *generally*, *id*. The fact of being arrested and charged in this case is not a useful strategy for disengagement and deradicalization because it does not address the lifetime of trauma Ms. Humber has endured. Ms. Humber has sought a sense of power and belonging through her years of engagement with people on Terrorgram. Her arrest and this prosecution in this case do not change this fact or provide her with desperately needed belonging and self-worth. Rather, true, long-lasting change lies in her engagement and connection with others outside of hateful ideologies. While this transformation may be more gradual, Ms. Humber is certainly capable of it and some of her budding relationships with people different from her while incarcerated offers glimmers of hope. She is not beyond redemption. Twenty-five years is reasonable to sufficiently punish and incapacitate Ms. Humber, while providing an opportunity for a changed life inside and outside of custody.

      Additionally, other similarly situated individuals who have been involved in militant accelerationism have received sentences far below 25 years. Critically, Pavol Benadik and Matthew Althorpe, both referenced in the PSR as propaganda creators and disseminators on Terrorgram, received sentences of six years and a range of 14–20 years respectively. Ms. Humber is not more culpable than them because her actions are on par with theirs in terms of creating and disseminating propaganda and seeking to influence others to act. Further, a woman (Ms. Clendaniel) involved in this movement who tried to destroy the Baltimore power grid recently received an overall sentence of 18 years. *See* https://www.justice.gov/archives/opa/pr/maryland-woman-sentenced-conspiring-destroy-baltimore-region-power-grid. While Ms. Humber's conduct in the underlying case is dire, she is not alleged to have ever engaged in any coordinated attack.

      For all these reasons, and to reflect the seriousness of the offense but also permit Ms.

Humber and society some hope of transformation which is the best protection the public could have, a 25-year sentence is reasonable and sufficient to meet the goals of sentencing under 18 U.S.C. § 3553(a).

## BACKGROUND

Ms. Humber's life has been difficult nearly from the beginning as noted in Dkt. 88 (Def. Exh. B). Ms. Humber's childhood suffering was multifaceted and contributed to her feelings of alienation from her peers in school. *Id*. at 17. The scars from her early and continued experiences of trauma led her to seek companionship and attention on the internet. *Id*. at 18-20. Ms. Humber was groomed from a young age to get attention from men online in a way that she has clung to throughout her life. *See id*. She has struggled with self-hate in myriad forms including drug addiction, anorexia, suicide attempts and remaining in violent relationships. The way in which Ms. Humber has managed to feel powerful and accepted is by expressing hate online although, notably, she has never personally acted to harm any person or structure.

She has only begun processing her traumatic experiences in discussing some of those incidents with the defense team. *Id*. She has a lot to work through and there is a lot to be done in terms of creating an alternative non-hateful community that is attractive and available. As noted above, the scientific literature suggests that having an alternate community where she feels a sense of belonging, affirmation, and recognition before is what could pull her away from a hate-based community. *See* Windisch, S., Simi, P., Ligon, G.S., & McNeel, H. (2016) *Disengagement from Ideologically-Based and Violent Organizations: A Systematic Review of the Literature*. Journal for Deradicalization, 9, 1-38; *see also* Prins, *Unlearning and Deradicalizing from White Christian Nationalism: Implications for Adult Learning and Education.* New Directions for Adult and Continuing Education, 2025, 2025:67-74, https://doi.org/10.1002/ace.20567

Ms. Humber is now before the Court having pleaded guilty to the Indictment. Dkt. 72. Her guidelines are life. *See* Dkt. 88 ¶ 173.

////

////

**FORMAL OBJECTIONS**

Objection 1: PSR p. 11 fn. 2 and 3: Defense does not merely report or state that Ms. Humber did not groom Juraj Kracik and that Ms. Humber did not have as wide a reach as Mr. Allison and Mr. Benadik did in Terrorgram channels.  These are matters that have been documented, as provided to you, in a documentary produced by Frontline and ProPublica at https://www.propublica.org/article/telegram-terrorgram-collective-bratislava-murders-neo-nazi-online-hate and https://www.pbs.org/wgbh/frontline/documentary/the-rise-and-fall-of-terrorgram/ (March 25, 2025) at 43:30-50:30 and 52-53; 55:20-55:40.  See at https://www.pbs.org/wgbh/frontline/documentary/the-rise-and-fall-of-terrorgram/ (March 25, 2025) at 54:17-54:56; 1:03:20-1:05:00 (last accessed November 24, 2025). This should be noted for the record.

Objection 2: PSR ¶ 49: Ms. Humber does not object to the restitution request for installation of a security system.  Please correct the typo.

Objection 3: PSR p. 30 fn. 6: Attached are the records that Mr. Gantt was convicted of possession of child pornography.  Exh. A.

Objection 4: PSR ¶ 149: A pineal cyst can be evidence of traumatic brain injury.  *See* https://www.cedars-sinai.org/health-library/diseases-and-conditions/b/brain-cyst.html (last accessed November 24, 2025).

**SENTENCING MEMORANDUM**

Ms. Humber respectfully requests the Court sentence her to 25 years, which is a weighty sentence that addresses her lifetime of trauma and accounts for the punishment similarly situated individuals have received.  It is a harsh punishment that is reasonable and sufficient to meet the goals of sentencing under 18 U.S.C. § 3553(a).

**LEGAL AUTHORITY**

District courts have "wide discretion to decide whether [a defendant] should be

incarcerated and for how long." *Beckles v. United States*, 137 S. Ct. 886, 893 (2017). The guidelines are one of "several factors" to be considered, but they "do not constrain [the district court's discretion.]" *Id*. at 893–94 (citations omitted); *see also id.* at 896 (rejecting the government's argument that the guidelines are unlike "the other § 3553(a) factors"). Indeed, a sentencing court "must make an individualized assessment based on the facts presented." *Gall v. United States*, 552 U.S. 38, 50 (2007); *see e.g.*, *Nelson v. United States*, 555 U.S. 350, 352 (2009).

The Supreme Court has ruled that individualized sentencing decisions must be grounded in the factors set forth at 18 U.S.C. § 3553(a). *United States v. Booker*, 543 U.S. 220, 245 (2005). These factors include the nature and circumstances of the offense, the history and characteristics of the defendant, and the need for the sentence imposed to reflect the seriousness of the offense, provide just punishment, afford adequate deterrence, protect the public, avoid unwarranted sentencing disparities among defendants with similar records convicted of similar conduct, and provide restitution. 18 U.S.C. § 3553(a). The overriding mandate of 18 U.S.C § 3553 is that the sentencing "court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing set forth in subparagraph (a)(2). 18 U.S.C. § 3553(a). The four purposes of sentencing as identified by the Supreme Court are "retribution, deterrence, incapacitation, and rehabilitation." *Tapia v. United States*, 131 S.Ct. 2382, 2387 (2011).

For the reasons stated below, in Ms. Humber's case, an individualized assessment of the applicable § 3553(a) factors demonstrates that a total sentence of 25 years custody is sufficient to meet the goals of sentencing.

### ARGUMENT

Ms. Humber respectfully requests that the Court sentence her to a total of 25 years custody. Such a sentence accounts for the seriousness of the offense conduct, while also acknowledging Ms. Humber's trauma, the sentences of those similarly situated, and her nascent efforts to begin dealing with the trauma that has led her to seek out relationships in a hate-based community. As a result, a low-end sentence of 25 years is reasonable and sufficient to meet the

goals of sentencing under 18 U.S.C. § 3553(a).

### 1. *The nature and circumstances of the offense*

Ms. Humber does not minimize the seriousness of this offense, especially considering the number of people who were put in fear of their lives.

### 2. *Ms. Humber's history and characteristics*

Ms. Humber was exposed to extreme physical, emotional, and sexual abuse. *See* Dkt. 88 Def. Exh. B. She was bullied in school and has experienced great trauma. *Id*. Unsurprisingly, she has been diagnosed with post-traumatic stress disorder, struggled with substance use, been in violent relationships, and has surrounded herself with negative influences. *See id*. at Def. Exh. C.

Despite these setbacks, she has been able to maintain consistent employment for approximately six years prior to her arrest. PSR ¶¶ 166-167. She does not want to live the rest of her life in prison and there is reason to hope that she can lead a law-abiding life.

### 3. *The need for the sentence to reflect the seriousness of the offense, promote respect for the law, and provide just punishment*

The requested sentence of 25 years is sufficiently just and addresses the seriousness of the offense. It is a significant and lengthy sentence that is appropriate.

### 4. *The need to afford adequate deterrence to criminal conduct and protect the public from further crimes*

The requested sentence incapacitates Ms. Humber for 25 years. A longer carceral sentence will not have any further deterrent effect. With the right support and in an environment that provides Ms. Humber with a pro-social community, she does not present a danger to the public. Allowing her to develop a pro-social community is the best way to deter future crimes and protect the public.

### 5. *The need to provide Ms. Humber with needed educational or vocational training, or other correctional treatment in the most effective manner*

Prison is not rehabilitative. Ms. Humber needs support in fostering the community and skills she needs for a pro-social community.

### 6. *The need to avoid unwarranted sentencing disparities*

The requested sentence is high in comparison with Mr. Benadik, Mr. Althorpe, and Ms. Clendaniel. However, a twenty-five-year sentence would not result in any unwarranted sentencing disparity. A higher sentence would create sentencing disparities considering that similarly situated individuals have received lower sentences. First, Mr. Benadik, otherwise known as "Slovakbro" received a sentence of six years. He was very prolific on Terrorgram, as noted in Def. Obj. 1 above, and had a far wider reach in terms of influence than Ms. Humber. Mr. Benadik was the person who truly groomed Juraj Krajcik, the shooter in Bratislava, Slovakia who killed 3 people in an LGBTQ bar. *See* https://www.propublica.org/article/telegram-terrorgram-collective-bratislava-murders-neo-nazi-online-hate and https://www.pbs.org/wgbh/frontline/documentary/the-rise-and-fall-of-terrorgram/ (March 25, 2025) at 43:30-50:30 and 52-53; 55:20-55:40 (last accessed November 25, 2025).

Second, Mr. Althorpe, on the other hand, is the most similarly situated to Ms. Humber in the sense that he was a content creator on Terrorgram. He pulled Ms. Humber into participating in various publications. He has recently pleaded guilty and faces a prospective sentencing range of 14–20 for notably similar conduct. *See* Exh. B- Althorpe plea documents. He has distanced himself from Terrorgram, which potentially accounts for his slightly lower sentence.

Third, Ms. Clendaniel, who was involved in the militant accelerationist movement, and actually sought to destroy the Baltimore power grid, received an overall sentence of 18 years. *See* https://www.justice.gov/archives/opa/pr/maryland-woman-sentenced-conspiring-destroy-baltimore-region-power-grid. A sentence of 25 years aligns Ms. Humber's sentence with similarly situated individuals whereas a 30-year sentence or higher would potentially give her double what the most similarly situated individual will receive.

### CONCLUSION

For all the reasons stated above, Ms. Humber respectfully asks this Court to impose a sentence of 25 years, which significantly punishes her for the underlying offense, while also acknowledging her traumatic life experiences and what similarly situated individuals have received as sentences. She requests placement at Waseca.

Respectfully submitted,

HEATHER E. WILLIAMS
Federal Defender

Date: November 26, 2025

/s/ *Noa Oren*
NOA OREN
Assistant Federal Defender
Attorney for Defendant
Dallas Erin Humber