JOHN BALAZS, Bar # 157287
Attorney at Law
916 2nd Street, Suite F
Sacramento, CA 95814
Telephone: (916) 447-9299
balazslaw@gmail.com

KYLE KNAPP, Bar #166587
Attorney at Law
916 2nd Street, Second Floor
Sacramento, CA 95814
Telephone: (916) 441-4717
kyleknapp@sbcglobal.net

Attorneys for Defendant
MATTHEW ROBERT ALLISON

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    vs.<br><br>MATTHEW ROBERT ALLISON,<br><br>    Defendant. | Case No. 2:24-CR-0257-DC<br><br>**Defendant's Brief Regarding Discovery Procedures Under the Classified Information Procedures Act (CIPA)**<br><br><u>Status Conference:</u><br>Date: February 6, 2026<br>Time: 9:00 a.m.<br>Hon. Dena Coggins |

## I.    INTRODUCTION

Defendant Matthew Allison, through counsel, submits this brief regarding procedures under the Classified Information Procedures Act (CIPA).

## II.    PROCEDURAL BACKGROUND

In an indictment filed September 5, 2024, the government charged defendants Dallas Humber and Matthew Allison with the following 15 counts: conspiracy in violation of 18 U.S.C. § 371 (count 1); solicitation of a hate crime in violation of 18 U.S.C. § 373 (counts 2-5); solicitation of murder of a federal official in violation of 18 U.S.C. § 373 (counts 6-8); doxing of federal officials in violation of 18 U.S.C. § 119 (counts 9-11); interstate threatening communications in violation of 18 U.S.C. § 875(c) (count 12); distribution of information relating to explosives and destructive devices in violation of 18 U.S.C. § 842(p) (counts 13 and 14); and conspiracy to provide material support to terrorists in violation of 18 U.S.C. § 2339A (count 15). ECF No. 1.[1]

On January 10, 2025, the government filed a motion for a pretrial conference under § 2 of the Classified Information Procedures Act (CIPA), 18 U.S.C. App. III, § 2. ECF Nos. 37, 58. At a hearing on January 17, 2025, the Court granted the government's unopposed request to appoint a Classified Information Security Officer. ECF No. 38, 55. At the time, the Court deferred setting a discovery and motions schedule in relation to classified information and set a further status conference for March 28, 2025. ECF No. 38. Since then, the Court has granted requests to continue the case to provide the defense with time to review the voluminous discovery and prepare for motions and trial.

---

[1] The government has also charged defendants in two related cases involving what it has called the "Terrorgram Collective," that is a network of channels, group chats, and users on the Telegram platform that allegedly advocate for the use of violence as part of a collapse of the government and the rise of a white nationalist state. *See United States v. Lamb,* No. 2:25-CR-0152-DC and *United States v. Iacoviello,* No. 2:25-CR-0211-DC.

In a prior filing, the government stated that at the § 2 pretrial conference, it would be prepared to "provide an estimate of the remaining time necessary to finish its review of any potentially relevant classified information" and suggests a schedule for "motions under CIPA section 4 relating to deletion, substitution, or disclosure of classified materials." ECF No. 37, at 9. At the February 6 status conference, the defense requests that the government advise whether it has completed its review of classified materials and that the Court address with the parties the appropriate CIPA procedures to be followed for the discovery of classified materials in this case.

## III.    Argument

### A.    CIPA is intended to ensure that a defendant in a criminal trial obtains the information he needs to present his defense consistent with national security needs.

The Classified Information Procedures Act (CIPA) sets out procedures for the production of discovery of classified materials and the use of classified information in criminal cases. 18 U.S.C. App. III, at §§ 4, 6 (CIPA). CIPA does not, however, limit the government's discovery obligations. *United States v. Alahmedalabdaloklah,* 94 F.4th 782, 810 (9th Cir. 2024) ("CIPA 'does not expand or restrict established principles of discovery and does not have a substantive impact on the admissibility of probative evidence.'") (*quoting United States v. Sedaghaty,* 728 F.3d 885, 903 (9th Cir. 2013)), *cert. denied,* 145 S. Ct. 770 (2024). In debating the statute, Congress confirmed that CIPA "rests on the presumption that the defendant should not stand in a worse position, because of the fact that classified information is involved, than he would without [CIPA]." S. Rep. 96-823, at 9 (1980), reprinted in 1980 U.S.C.C.A.N. 4294, 4302.

This brief addresses the appropriate procedures for the *discovery* of information the government may deem classified.  The mechanisms and procedures for discovery are set forth in § 4 of CIPA:

> § 4   Discovery of Classified Information by defendants
> The court, *upon a sufficient showing,* may authorize the United States to delete specified items of classified information from documents to be made available to the defendant through discovery under the Federal Rules of Criminal Procedure, to substitute a summary of the information for such classified documents, or to substitute a statement admitting relevant facts that the classified information would tend to prove.  The court may permit the United States to make a request for such authorization in the form of a written statement to be inspected by the court alone.  If the court enters an order granting relief following such an ex parte showing, the entire text of the statement of the United States shall be sealed and preserved in the records of the court to be made available to the appellate court in the event of an appeal.  (Emphasis added).

Section 4 permits the government to delete, summarize, or substitute specified items of classified information before providing items in discovery, but only "upon a showing" that full production would pose a reasonable danger to national security.  18 U.S.C. App. III, § 4; *see also United States v. Abu-Jihaad,* 630 F.3d 102, 141 (2d Cir. 2010) (the "states secrets" privilege to withhold information under CIPA Section 4 applies only if "there is a reasonable danger that compulsion of the evidence will expose . . . matters which, in the interest of national security, should not be divulged").  CIPA is intended to ensure that a defendant in a criminal trial obtains the information he needs to present his defense consistent with national security needs.  The "fundamental purpose" of CIPA "is to protect [] and restrict [] the discovery of classified information in a way that does not impair the defendant's right to a fair trial." *United States v. Dumeisi,* 424 F.3d 566, 578 (7th Cir. 2005) (quoting *United States v. O'Hara,* 301 F.3d 563, 568 (7th

Cir. 2002)).  "Indeed, the 'need to develop all relevant facts in the adversary system is both fundamental and comprehensive.'"  *United States v. Sedaghaty*, 728 F.3d 885, 905 (9th Cir. 2013) (*quoting United States v. Nixon*, 418 U.S. 683, 709 (1974)).

> **B.    CIPA does not *require* that the Court withhold the government's filings from the defense.**

CIPA § 4 states that "[t]he court *may* permit the United States to make a request for such authorization in the form of a written statement to be inspected by the court alone." (Emphasis added).  Nothing in the statute permits the government to make such ex parte submissions as a matter of right.  Rather, the use of the permissive "may" in the text of CIPA § 4, rather than the mandatory "shall," makes clear that courts retain discretion to reject ex parte submissions on a case-by-case basis.

Congress patterned the ex parte provision of CIPA § 4 on a similar provision in Federal Rule of Criminal Procedure 16(d)(1), which governs protective orders in criminal cases.  Rule 16(d)(1), too, does not use the words "must" or "shall."  Instead, Rule 16(d)(1) states that a court "may" permit a party to show good cause for a protective order through an ex parte statement.  Congress amended the language of proposed Rule 16(d)(1) from requiring ex parte proceedings at the request of a party to permitting such proceedings.  The House Judiciary Committee observed that in determining whether to proceed ex parte, a court should "bear[] in mind that ex parte proceedings are disfavored and not to be encouraged.  Fed. R. Crim. P. 16, Advisory Committee Notes.

As the Ninth Circuit emphasized, "ex parte proceedings are anathema in our system of justice."  *Guenther v. Commissioner of Internal Revenue*, 889 F.2d 882, 884 (9th Cir. 1989); *see Detroit Free Press v. Ashcroft,* 303 F.3d 681, 683 (6th Cir. 2002) ("Democracies die behind closed doors.").  By their very nature, ex parte

proceedings impair the integrity of the adversary process and the criminal justice system. "Fairness can rarely be obtained by secret, one-sided determination of facts decisive of rights . . . .  No better instrument has been devised for arriving at truth than to give a person in jeopardy of serious loss notice of the case against him and opportunity to meet it." *United States v. James Daniel Good Real Prop.,* 510 U.S. 43, 55 (1993) (in absence of exigent circumstances, due process requires government to provide notice and a meaningful opportunity to be heard before seizing real property subject to civil forfeiture) (quoting *Joint Anti-Fascist Refugee Committee v. McGrath,* 341 U.S. 123, 170-72 (1951) (Frankfurter, J., concurring).

When Congress intends to require ex parte procedures in the national security setting, it knows how to say so.  For example, in the Foreign Intelligence Surveillance Act (FISA), Congress declared that the Court "shall" review FISA applications, orders, and related materials ex parte if the Attorney General submits an affidavit that an adversarial proceeding would harm national security.  *See* 50 U.S.C. § 1806(f) (2000); *see also* S. Rep. No. 96-823, at 6 (1980) (discussing the relation between CIPA § 4 and Federal Rule of Criminal Procedure 16(d)(1)).

As the Ninth Circuit observed in the closely analogous context of a secret evidence case, "[o]ne would be hard pressed to design a procedure more likely to result in erroneous deprivations. . . . [T]he very foundation of the adversary process assumes that use of undisclosed information will violate due process because of the risk of error." *American-Arab Anti-Discrimination Comm. v. Reno,* 70 F.3d 1045, 1969 (9th Cir. 1995) (internal quotation marks and citation omitted), vacated on other grounds in *Reno v. American-Arab Anti-Discrimination Comm.,* 525 U.S. 471 (1999)).

Likewise, in *Alderman v. United States,* 394 U.S. 165 (1968), the Court addressed the procedures in determining whether government eavesdropping in

violation of the Fourth Amendment contributed to its case against the defendants. The Court rejected the government's suggestion that the district court make that determination ex parte, observing:

> [a]n apparently innocent phrase, a chance remark, a reference to what appears to be a neutral person or event, the identity of a caller or the individual on the other end of a telephone, or even the manner of speaking or using words may have special significance to one who knows the more intimate facts of an accused's life.  And yet that information may be wholly colorless and devoid of meaning to one less well acquainted with all relevant circumstances.

*Id.* at 182.

> ### C.     The decision to withhold discovery under CIPA is fact-dependent and requires an understanding of the defense case and input from the defendant's counsel.

To determine whether the government can withhold classified discovery, the Ninth Circuit and most other courts have adopted the relevant-and-helpful-to-the-defense test from the Supreme Court's decision in *Roviaro v. United States,* 353 U.S. 53, 60-61 (1957).  *See United States v. Klimavicius-Viloria,* 144 F.3d 1249, 1261 (9th Cir. 1998).  The Court, which has not had an opportunity to review the discovery, consult with the defense, or otherwise investigate the facts of this case, cannot be expected to surmise the factual nuances of the defense.  As the Supreme Court has recognized, "[i]n our adversary system, it is enough for judges to judge. The determination of what may be useful to the defense can properly and effectively be made only by an advocate." *Dennis v. United States,* 384 U.S. 855, 875 (1966).

The district court must first determine whether the classified material is discoverable under the Federal Rules of Criminal Procedure, a statute, common law, or the Constitution.  *United States v. Alahmedalabdaloklah*, 94 F.4th 782, 811 (9th Cir. 2024).  Once the material is determined to be discoverable, "the

Government must formally assert the state-secrets privilege to withhold the information as classified." *Id.* The "claim of privilege must 'be lodged by the head of the department which has actual control over the matter, after actual personal consideration by that officer." *Id.* (*quoting Klimavicius-Viloria*, 144 F.3d at 1261).[2] This "certification by a department's political head is 'fundamental to the government's claim of privilege' and 'responsibility for this task may not be delegated to lesser-ranked officials.'" *Id.* at 813 (*quoting Mohamed v. Jeppesen Dataplan, Inc.,* 614 F.3d 1070, 1080 (9th Cir. 2010) (en banc)). District courts are tasked with "enforc[ing] this rule strictly" in all CIPA cases. *Id.*

"If the Court determines that the information is discoverable and the state-secrets privilege applies, the court next must determine whether the evidence is 'relevant and helpful to the defense of the accused." *Id*. at 811. If so, CIPA permits the district court to determine the manner the information is to be disclosed to the defense. *Id.*

Here, the government has stated in its CIPA notice that after reviewing a "substantial quantity of additional material that is currently classified," it believes that "[s]ome of this material may be subject to disclosure in advance of trial and could raise issues of national security that the Court will need to address under CIPA." ECF No. 37, at 9. In that case, if the appropriate department head has invoked the state-secrets privilege, the critical question under *Roviaro* is whether the material is "helpful to the defense." If so, the government's privilege under

---

[2]    Other courts are divided on this issue. *Compare United States v. Aref*, 533 F.3d 72, 80 (2d Cir. 2008) (requiring privilege to be asserted by the department head) *with United States v. Mezain*, 664 F.3d 467, 521-22 (5th Cir. 2011) (disagreeing with *Aref*); *United States v. Rosen*, 557 F.3d 192, 198 (4th Cir. 2009) (holding that agency head need not invoke the privilege in criminal matters under CIPA).

CIPA "must give way."  *United States v. Aref,* 533 F.3d 72, 79-80 (2d Cir. 2008); *see also Dumeisi,* 424 F.3d at 578 (citation omitted).  The definition of "helpful" in this context is broad and includes more information than would be discoverable under the *Brady* exculpatory-evidence threshold.  *See, e.g. Aref,* 533 F.3d at 80. "Helpful" includes information that is "useful to counter the government's case or to bolster a defense."  *Id.* (internal quotation and citation omitted); *see also United States v. Sun,* 2025 U.S. Dist. Lexis 211419, at * 9 (E.D. N.Y. Oct. 27, 2025) (explaining that because "evidence that a search is tainted is, of course, helpful to the defense because the fruits of that search could then be suppressed. . . . [s]uch an inquiry is therefore part and parcel of the in camera, *ex parte* review of classified materials under CIPA").

Because the defendant's constitutional rights to a fair trial and to present a complete defense are at stake, what is "helpful" should be viewed expansively. Indeed, in *United States v. Sedaghaty,* 728 F.3d 885 (9th Cir. 2013), for example, the Ninth Circuit reversed a conviction, in part, because the government withheld classified information that would have been helpful to the defendant's defense at trial.  *Id.* at 885.  In reversing for a new trial, the Court held that the district court erred "in approving an inadequate substitution for classified material that was relevant and helpful to the defense."  *Id.* at 892.  The Court explained that the government's substitute summary "excludes exculpatory information and fails to provide crucial context for certain information that it does convey."  *Id.* at 906.  "In the end, the inadequate substitution interfered with [the defendant's] ability to present a complete defense."  *Id.* at 907.

By its very nature, the Court is no substitute for defense counsel.  In this case, discovery is complex and voluminous and input from the defense is necessary via either an ex parte hearing and/or a sealed, ex parte defense submission before

the Court resolves important CIPA discovery issues.  *See, e.g., United States v. Lemma,* 2025 U.S. Dist. Lexis 196810, at ** 8-9,  (D. D.C. Oct. 3, 2025) (permitting the defense to submit a sealed, *ex parte* brief to aid the court in making its CIPA discovery decisions); *United States v. Trump,* 701 F.Supp.3d 1, 3 (D. D.C. 2023) ("the court has followed the established procedure of holding an *ex parte* hearing with defense counsel to better understand whether the withheld information is relevant and helpful"); *United States v. Salas-Aguayo,* 2024 U.S. Dist. Lexis 4700, at *30, 2024 WL 95372 (D. N.M. Jan. 9, 2024) ("the Court proposes to hold an ex parte hearing with Quintana's counsel to learn about Quintana's theories of defense such that the Court will be better equipped to determine whether any information the United States seeks to withhold or substitute is helpful to Quintana's defense," and inviting counsel "to submit for the court's in camera consideration a summary of anticipated defenses" for the court to "more accurately evaluate" what materials should be disclosed as "relevant and helpful to the defense").  The Court thus should provide the defense an opportunity to provide input on an *ex parte* basis to support the Court's decision-making on what materials are discoverable under Rule 16*, Brady, Giglio,* or other authority.[3]

Respectfully submitted,

Dated:  January 27, 2026

/s/ Kyle Knapp
KYLE KNAPP
/s/ John Balazs
JOHN BALAZS

Attorneys for Defendant
MATTHEW ROBERT ALLISON

---

[3]    Although neither defense counsel has a security classification, the defense team would be able to retain such counsel to assist the defense and the Court if appropriate.