JOHN BALAZS, Bar # 157287
Attorney at Law
916 2nd Street, Suite F
Sacramento, CA 95814
Telephone: (916) 447-9299
balazslaw@gmail.com

KYLE KNAPP, Bar #166587
Attorney at Law
916 2nd Street, Second Floor
Sacramento, CA 95814
Telephone: (916) 441-4717
kyleknapp@sbcglobal.net

Attorneys for Defendant
MATTHEW ROBERT ALLISON

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>MATTHEW ROBERT ALLISON,<br><br>Defendant. | Case No. 2:24-CR-0257-DC<br><br>**MOTION TO COMPEL THE GOVERNMENT TO PROVIDE NOTICE OF ITS INTENT TO USE OR DISCLOSE EVIDENCE OBTAINED OR DERIVED FROM SURVEILLANCE CONDUCTED UNDER SECTION 702 OF THE FOREIGN INTELLIGENCE SURVEILLANCE ACT (FISA) OR OTHER FOREIGN SURVEILLANCE AUTHORITIES**<br><br>Motion Hearing:<br>Date: TBD<br>Time: TBD<br>Hon. Dena Coggins |

1

## I.    INTRODUCTION AND MOTION

Defendant Matthew Allison moves, through counsel, to compel the government to provide him with notice of its intent to use or disclose information obtained or derived from surveillance under Section 702 of the Foreign Intelligence Surveillance Act of 1978 (FISA), 50 U.S.C. §1881a, § 1806(c), (e), and § 1881e(a) or other foreign surveillance authorities.  *See United States v. Moalin,* 973 F.3d 977, 999-1001 (9th Cir. 2020), *cert. denied,* 2025 U.S. Lexis 4197 (Nov. 10, 2025).  This motion is based on FISA, its amendments, the Fourth Amendment, and the Due Process Clause of the Fifth Amendment.  Mr. Allison asks that a schedule for the briefing and hearing of this motion be set at the February 6 status conference in this case.

## II.    PROCEDURAL BACKGROUND

In an indictment filed September 5, 2024, the government charged defendants Dallas Humber and Matthew Allison with the following 15 counts: conspiracy in violation of 18 U.S.C. § 371 (count 1); solicitation of a hate crime in violation of 18 U.S.C. § 373 (counts 2-5); solicitation of murder of a federal official in violation of 18 U.S.C. § 373 (counts 6-8); doxing of federal officials in violation of 18 U.S.C. § 119  (counts 9-11); interstate threatening communications in violation of 18 U.S.C. § 875(c) (count 12); distribution of information relating to explosives and destructive devices in violation of 18 U.S.C. § 842(p) (counts 13 and 14); and conspiracy to provide material support to terrorists in violation of 18 U.S.C. § 2339A (count 15).  ECF No. 1.[1]  Ms. Humber has since pled guilty and has been sentenced.

---

[1]    The government has also charged defendants in two related cases involving what it has called the "Terrorgram Collective," that is a network of channels, group chats, and users on the Telegram platform that allegedly advocate for the use of violence as part of a collapse of the government and the rise of a white nationalist

The Indictment and other government pleadings in this case (as well as discovery) refer to offenses committed by other persons in foreign countries that purportedly were "inspired" by posts in chats and channels by Mr. Allison and others on the telegram platform. *See, e.g.* ECF No. 1, at paras. 30 (Slovakia shooting), 32 (Turkey stabbing); ECF No. 72, at A-1 (Brazil shooting), at A-3 (Australia assassination attempt).

On January 10, 2025, the government filed a motion for a pretrial conference under the Classified Information Procedures Act (CIPA), 18 U.S.C. App. III, § 2. ECF No. 37.  At a hearing on January 17, 2025, the Court granted the government's unopposed request to appoint a Classified Information Security Officer and deferred setting a discovery and motions schedule regarding classified materials.  ECF No. 38.  Since then, the parties have continued the case to provide the defense with time to review the voluminous discovery and prepare a defense. Although the defense team is still pouring through the voluminous discovery, we now seek notice of the government's intent to use or disclose information obtained or derived from surveillance under Section 702 of FISA, 50 U.S.C. §1881a, § 1806(c), (e), and § 1881e(a), or other foreign surveillance authorities.

## III.   ARGUMENT

### A.    Section 702 Surveillance and the Notice Requirement

The government uses Section 702, 50 U.S.C. § 1881a, to intercept immense quantities of international communications, including many communications involving Americans. It does so by "targeting" hundreds of thousands of foreigners located abroad. 50 U.S.C. § 1881a(a); *see generally Report on the Surveillance Program Operated Pursuant to Section 702 of FISA*, Priv. & Civ. Lib. Oversight

---

state.  *See United States v. Lamb,* No. 2:25-CR-0152-DC and *United States v. Iacoviello,* No. 2:25-CR-0211-DC.

Bd. (Sept. 28, 2023) (hereinafter, "PCLOB Report").[2] Section 702 authorizes the targeting of non-U.S. persons who the government reasonably believes are outside the United States to acquire foreign intelligence information but the procedures are supposed to "prevent the intentional acquisition of any communication as to which the sender and all intended recipients are known at the time of the acquisition to be located in the United States." *Id.* at § 1881a(d)(1). Thus, "the government may not 'intentionally target' anyone located in the United States or a 'United States person' outside the United States." *United States v. Hasbajrami,* 2024 U.S. Dist. Lexis 239431, at *7, 2025 WL 447498 (E.D. N.Y. Feb. 10, 2025) (quoting 50 U.S.C. § 1881a(b)(1), (3)). "Nor may the government engage in 'reverse targeting' of U.S. persons by targeting someone outside the country simply to collect communications with someone inside the United States." § 1881a(b)(2). Because many of those foreigners communicate with people in the United States, however, the government's surveillance routinely sweeps up Americans whose communications are entitled to constitutional protection. *See Hasbajrami,* 2024 U.S. Dist. Lexis 239431, at *8 (citing PCLOP report).

"Section 702 is extremely complex, and provides a mechanism that allows multiple agencies to collect various types of information for a multitude of persons." *Id.* at *3. The government stores the intercepted communications in intelligence agency databases, retains them for years, and searches them repeatedly for information about Americans— including in domestic criminal investigations. *Id.* This surveillance takes place inside the United States, with the compelled assistance of major communications providers and technology companies. *Id.*

[2] *Available at* https://documents.pclob.gov/prod/Documents/OversightReport/054417e4-9d20-427a-9850-862a6f29ac42/2023%20PCLOB%20702%20Report%20(002).pdf

All of this surveillance is conducted without a warrant or any individualized judicial approval. A crucial difference between Section 702 and traditional FISA is that Section 702 authorizes surveillance *without probable cause or individualized suspicion*. With respect to U.S. persons, Section 702 allows the government not just to warrantlessly collect, but to retain, query, review, and use U.S. persons' communications with targeted persons. No court reviews the government's targets or approves the government's subsequent use of this surveillance to investigate individual Americans. The Foreign Intelligence Surveillance Court ("FISC") has only limited involvement, conducting an annual review of the general procedures the government proposes to use in carrying out the surveillance program as a whole. *See* 50 U.S.C. § 1881a.

"Individuals affected by FISA surveillance are very often unaware of the surveillance unless it is revealed by the Government." *FBI v. Fazaga,* 595 U.S. 344, 356 (2022). Because this surveillance often implicates the constitutionally protected privacy interests of people in the United States, Section 702 requires notice in certain circumstances. The statute provides:

> Whenever the Government intends to enter into evidence or otherwise use or disclose in any trial, hearing, or other proceeding in or before any court, department, officer, agency, regulatory body, or other authority of the United States, against an aggrieved person, any information obtained or derived from an electronic surveillance of that aggrieved person pursuant to the authority of this subchapter, the Government shall, prior to the trial, hearing, or other proceeding or at a reasonable time prior to an effort to so disclose or so use that information or submit it in evidence, notify the aggrieved person and the court or other authority in which the information is to be disclosed or used that the Government intends to so disclose or so use such information.

50 U.S.C. § 1806(c); *see* 50 U.S.C. § 1881e(a) (applying § 1806 to Section 702 surveillance).

The Supreme Court has recognized that notice of Section 702 surveillance in criminal cases is essential to ensuring judicial review of these warrantless searches. In *Clapper v. Amnesty International USA*, 568 U.S. 398 (2013), the Supreme Court held that although the plaintiffs lacked standing, Section 702 was not insulated from judicial review in part because "if the Government intends to use or disclose information obtained or derived from a [Section 702] acquisition in judicial or administrative proceedings, it *must* provide advance notice of its intent, and the affected person may challenge the lawfulness of the acquisition." *Id.* at 421 (citing 50 U.S.C. §§ 1806(c),1806(e), 1881e(a)) (emphasis added)).  In doing so, the Supreme Court indicated that one important avenue for judicial review of the government's warrantless surveillance program is criminal or administrative proceedings when Section 702 information is at issue. *Id.*; *see also id.* at 421 n.8 (noting that defendants are able to challenge the lawfulness of FISA evidence once the government provided FISA notice, even where the defendant had not been the target of the search).

**B.    Mr. Allison is Entitled to Notice**

In its motion for a pretrial conference and for appointment of a classified information security officer, the government advised that it has already "reviewed a substantial quantity of additional materials that is currently classified" and that "[s]ome of this material may be subject to disclosure in advance of trial and could raise issues of national security that the Court will need to address under CIPA." ECF No. 37, at 9.  It thus requested a pretrial conference to address discovery and motions related to any classified information.  *Id.*  This material may be

information obtained or derived under Section 702 or other foreign intelligence surveillance.

The government is required by FISA and the Fourth and Fifth Amendments to provide Mr. Allison with notice of its intent to use information "obtained or derived from" Section 702 surveillance or other foreign intelligence authorities in its prosecution. 50 U.S.C. §§ 1881e(a) & 1806(c); *United States v. Moalin,* 973 F.3d 977, 999-1001 (9th Cir. 2020), *cert. denied,* 2025 U.S. Lexis 4197 (Nov. 10, 2025). Further, the Fourth Amendment and due process requires that the accused have a meaningful opportunity to suppress the fruits of illegally acquired evidence. *See, e.g., Berger v. United States,* 388 U.S. 41, 60 (1967) (finding wiretapping statute unconstitutional because, among other things, it had "no requirement for notice as do conventional warrants"). As the Ninth Circuit explained in *Moalin,*

> This constitutional notice requirement applies to surveillance conducted under FISA and the [FISA Amendments Act (FAA)], which codify the requirement with respect to several types of surveillance. 50 U.S.C. §§ 1806(c), 1825(d), 1845(c), 1881e(a)(1). It also applies to surveillance conducted under other foreign surveillance authorities, including Executive Order 12,333 and the FAA's predecessor programs. Indeed, the notice requirement is of particular importance with regard to these latter, non-statutory programs precisely because these programs lack the statutory protections included in the FISA. Where statutory protections are lacking, the Fourth Amendment's reasonableness requirement takes on importance as a limit on executive power, and notice is necessary so that criminal defendants may challenge surveillance as inconsistent with that requirement.

973 F.3d at 1000-01; *see also United States v. Sun,* 2025 U.S. Dist. Lexis 211419, at *4 (E.D. N.Y. Oct. 27, 2025) ("Notice matters because without it, a surveilled defendant is left in the dark pondering whether the Government is advantaged and armed with evidence obtained in violation of the Fourth Amendment.").

Notice is especially important in the FISA context because of the complexity of the statute and myriad of ways that the government may unlawfully obtain or derivatively use information obtained via Section 702.  *See, e.g., Hasbajrami,* 2024 U.S. Dist. Lexis 29431, at *2 (noting that "[a]fter the defendant was already serving his sentence, the government disclosed for the first time that some of the evidence it had previously disclosed from FISA surveillance was itself the fruit of earlier information obtained without a warrant pursuant to" FISA).  For example, a government agent's querying a Section 702 database for information about a U.S. person without a warrant violates the Fourth Amendment, even if the initial information was lawfully intercepted via Section 702 procedures:

> A search that relics on an initial warrant or exception to the warrant requirement is limited by its original justification, and to intrude further on lawfully acquired items requires new and independent approval.  Just as the Supreme Court found that the cell phone in [*Riley v. California,* 573 U.S. 373, 381 (2014)] was lawfully seized pursuant to the search incident to arrest exception, the Second Circuit found that the "vast majority" of Defendant's communications were lawfully acquired as both outside Fourth Amendment protection and subject to the incidental overhear exception. *Riley*, 573 U.S. at 381; *Hasbajrami*, 945 F.3d at 663-64.  It follows, therefore, that just as the officers in *Riley* were required to obtain a warrant to search the seized cell phone, so to was the government required to obtain a warrant to view Defendant's communications that were lawfully intercepted. In other words, simply acquiring Defendant's communications under Section 702, albeit lawfully, did not, in and of itself, permit the government to later query the retained information.

*Hasbajrami,* 2024 U.S. Dist. Lexis 239431, at ** 21-22 (footnotes omitted).

To the extent the government warrantlessly surveilled and queried Mr. Allison's communications under Section 702 (or other foreign surveillance authorities) but claims that its evidence is not "derived from" this surveillance, the defense is entitled to litigate that question in adversarial proceedings.  *See*

8

*Alderman v. United States,* 394 U.S. 165, 183-85 (1969) (in a case involving the wiretapping of foreign spies, holding that the question of whether the government's evidence is "fruit of the poisonous tree" is so factually and legally complex that it cannot be litigated on an ex parte basis).[3]

## IV.  Conclusion

For these reasons, the Court should grant defendant Matthew Allison's motion to compel the government to provide notice of its intent to use or disclose information obtained or derived from Section 702 surveillance or other foreign surveillance authorities in the present case.

Respectfully submitted,

Dated:  January 27, 2026

/s/ Kyle Knapp
KYLE KNAPP

/s/ John Balazs
JOHN BALAZS

Attorneys for Defendant
MATTHEW ROBERT ALLISON

---

[3]  The government also must, of course, disclose any exculpatory and/or impeachment material under *Brady* and *Giglio,* should the government's databases contain any such material.