ERIC GRANT
United States Attorney
ROBERT ABENDROTH
Assistant United States Attorney

    United States Attorney's Office
    501 I Street, Suite 10-100
    Sacramento, CA. 95814
    Telephone: (916) 554-2700

HARMEET K. DHILLON
Assistant Attorney General, Civil Rights Division
CHRISTOPHER J. PERRAS
Special Litigation Counsel

    U.S. Department of Justice
    950 Pennsylvania Avenue NW
    Washington, DC 20530
    Telephone: (202) 514-3847

JOHN A. EISENBERG
Assistant Attorney General, National Security Division
PATRICK CASHMAN
Trial Attorney

    U.S. Department of Justice
    950 Pennsylvania Avenue NW
    Washington, DC 20530
    Telephone: (202) 514-2007

Attorneys for Plaintiff
United States of America

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. 2:24-CR-00257-DC |
| Plaintiff, | GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION FOR BILL OF PARTICULARS |
| v. | |
| DALLAS ERIN HUMBER MATTHEW ROBERT ALLISON, | MOTION HEARING: March 13, 2026 |
| Defendants. | JUDGE: Hon. Magistrate Judge Riordan |

GOVERNMENT'S RESPONSE TO DEFENDANT'S
MOTION FOR BILL OF PARTICULARS

1

The United States of America, through the undersigned counsel, hereby responds to Defendant Allison's Motion for Bill of Particulars (ECF 104), which is set for a motion hearing before Magistrate Judge Riordan on Friday, March 13, 2026 (ECF 106).  Part I of this response sets forth the reasons why the requested bill of particulars is not warranted.  Part II of this response offers additional information about the categories of evidence and theories of criminal liability supporting Counts 2-5 and 12-15 of the Indictment in the interest of assisting the defense in preparing for trial and eliminating any possible dispute about the charges and supporting evidence.  Part III of this response respectfully submits that the motion for bill of particulars should be denied on the merits, for the reasons set forth in Part I; or in the alternative, should be denied as moot based on the information provided by the government in Part II.

## I.    The Requested Bill of Particulars is Not Warranted

The United States respectfully submits that the Indictment, which includes 19 pages of factual allegations and 27 overt acts to supplement the legal charges, is sufficiently detailed to apprise Defendant Allison of the nature of the charges against him.  The Indictment lays out the structure, platform, and ideology of the Terrorgram Collective, and its ultimate goal: "to ignite a race war and 'accelerate' the collapse of the government and the rise of a white ethnostate." ECF 1, General Allegations, ¶¶1-4.  The Indictment specifies the different methods the Defendants used to achieve that goal: how they solicited individuals to commit hate crimes, terrorist attacks on critical infrastructure, and assassinations; and how they provided technical, inspirational, and operational guidance to equip those individuals to plan, prepare for, and successfully carry out those attacks. ECF 1, General Allegations, ¶¶5-28. The Indictment lists 27 overt acts committed by the Defendants and their co-conspirators committed in furtherance of their conspiracy. ECF 1, Count One, ¶4.  The Indictment describes the manner and means of the conspiracy: how the Defendants "conspired together to recruit, radicalize, equip, advise, inspire, and solicit others to commit attacks in furtherance of Terrorgram's mission." ECF 1, Count One, ¶3.  Finally, the Indictment lists three Terrorgram users who plotted and/or committed attacks in furtherance of Terrorgram's mission. ECF 1, General Allegations, ¶¶29-30.  That is far more information than is typically included in an indictment and it provides more than sufficient notice to Defendant Allison of the nature of the charges against him. *See United States v. Giese*, 597 F.2d 1170, 1180 (9th Cir. 1979) ("To the extent that the indictment or information itself provides details of the alleged offense, a bill of particulars is, of course,

GOVERNMENT'S RESPONSE TO DEFENDANT'S
MOTION FOR BILL OF PARTICULARS

2

unnecessary.") (quoting 8 MOORE'S FEDERAL PRACTICE P 7.06(1) at 7-31 n.1 (2d ed. 1978)).

If any questions remained about the specific evidence supporting those charges, those questions were answered by the government's discovery productions.  The government has not hidden the ball or withheld discovery to gain a strategic advantage; to the contrary, the government has provided expansive discovery that exceeds the scope of its discovery obligations, has provided a discovery index, and has met with defense counsel to highlight especially pertinent evidence. *See United States v. Hsuan Bin Chen*,  2011 WL 332713, at *8 (N.D. Cal. Jan. 28, 2011) (denying motion for bill of particulars, in case with "voluminous" discovery, because "the government began production of discovery as soon as the defendants and the Court signed a protective order" and "[t]he government conducted separate meetings with defense counsel explaining the charges against each defendant"); *United States v. Galecki,* 2018 WL 2390062, at *6 (D. Nev. May 24, 2018) (denying motion for bill of particulars, in case with "voluminous" discovery, because "the government furnished a searchable discovery index to defense counsel to aid their review of the discovery").  "Full discovery," which is what the defense has received in this case, "obviates the need for a bill of particulars." *Giese*, 597 F.2d at 1180 (affirming denial of bill of particulars, noting that "the government provided appellant with a large volume of information, including physical evidence offered at trial, grand jury testimony, and memoranda which revealed the government's theory of the case").

Because the indictment is sufficiently detailed to apprise Defendant Allison of the nature of the charges against him and because the supporting evidence was provided in discovery, a bill of particulars is not warranted in this case. *See United States v. Ayers*, 924 F.2d 1468, 1484 (9th Cir. 1991) ("Count One of the indictment specifies five separate means and methods used to carry out the conspiracy. The indictment also details fifteen overt acts committed to further the conspiracy. In addition, the government provided [defendant] with a significant amount of discovery. The district court found this sufficient to enable [defendant] to prepare his defense for trial. We agree."); *United States v. Mitchell*, 744 F.2d 701, 705 (9th Cir. 1984) (district court's denial of motion for bill of particulars was not an abuse of discretion because "[t]he indictment in this case is reasonably detailed and [defendant] makes no allegation that full discovery was not afforded pursuant to Fed. R. Crim. P. 16"); *Giese*, 597 F.2d at 1180–81 (affirming denial of motion for bill of particulars because the indictment "was neither vague or overbroad" and the government provided

GOVERNMENT'S RESPONSE TO DEFENDANT'S
MOTION FOR BILL OF PARTICULARS

3

the defense with "[f]ull discovery" that "revealed the government's theory of the case").

Defendant Allison's "request for the 'when, where, and how' of [Counts 2-5 and 12-15] [i]s equivalent to a request for complete discovery of the government's evidence, which is not a purpose of the bill of particulars." *Giese*, 597 F.2d at 1180–81; *see also United States v. Ryland*, 806 F.2d 941, 942 (9th Cir. 1986) ("A defendant is not entitled to know all the *evidence* the government intends to produce but only the *theory* of the government's case."); *United States v. Gillum*, No. 2:24-CR-0053-TLN, 2025 WL 2855034, at *2 (E.D. Cal. Oct. 8, 2025) (denying defense requests for a bill of particulars because they were "more akin to discovery requests, trial disclosures, or strategy inquiries and are beyond the bounds of Rule 7(f)").  A "defendant's constitutional right is to know the offense with which he is charged, not to know the details of how it will be proved." *United States v. Kendall*, 665 F.2d 126, 135 (9th Cir. 1981).

Furthermore, a bill of particulars with the degree of granularity requested by Defendant Allison would be impractical given the scope and nature of the charges against him.  For example, the hate crime solicitation charges against Defendant Allison and Humber are not based on a single conversation with a single solicitee about a single target (which would be easy enough to summarize in a bill of particulars); they are predicated on years of statements, posts, publications, and actions designed to solicit Terrorgram users to carry out bias-motivated attacks targeting people because of their race, religion, national origin, sexual orientation, and gender identity—solicitations that resulted in bias-motivated attacks around the world.  Evidence supporting those charges was listed in the indictment and provided to the defense via discovery; Rule 7(f) does not require the government to catalogue it in minute detail in a bill of particulars that would likely span hundreds of pages. *See United States v. Maurya*, 25 F.4th 829, 837–38 (11th Cir. 2022) ("[A] bill of particulars cannot be used as a weapon to force the government into divulging its prosecution strategy; we do not allow defendants to 'compel the government to detailed exposition of its evidence or to explain the legal theories upon which it intends to rely at trial.'").

For the foregoing reasons, the United States respectfully submits that the requested bill of particulars is unwarranted and appears designed not "to inform the defendant of the nature of the charge against him with sufficient precision to enable him to prepare for trial," *Giese*, 597 F.2d at 1180, but as "a tool to facilitate a fishing expedition to obtain an advance preview of the government's evidence" and "to unduly restrict the United States in the presentation of its proof at trial," *United States v. Hinkson*,

GOVERNMENT'S RESPONSE TO DEFENDANT'S
MOTION FOR BILL OF PARTICULARS

4

No. CR-04-127-C-RCT, 2004 WL 7333649, at *5 (D. Idaho Dec. 3, 2004).

**II.     Categories of Evidence and Theories of Liability Supporting Counts 2-5 and 12-15**

Nevertheless, in the interest of assisting the defense in preparing for trial and eliminating any possible dispute about the charges and supporting evidence, the United States hereby provides the following additional information about the categories of evidence and theories of criminal liability supporting Counts 2-5 and 12-15 of the Indictment.

Hate Crime Charges (Counts Two, Three, Four, and Five)

Counts Two through Five charge Defendant Allison with soliciting hate crimes, in violation of 18 U.S.C. § 373 and § 249, targeting "Black people and white people who associate with Black people" (Count Two), "Jewish people" (Count Three), "non-white immigrants" (Count Four), and "lesbian, gay, bisexual, and transgender people" (Count Five).  Counts Two through Five include three theories of liability: (1) direct liability, (2) aiding-and-abetting liability, and (3) *Pinkerton* liability.  Under these theories of liability, Defendant Allison is criminally responsible for hate crimes (1) that he personally solicited (direct liability), (2) that were solicited by Defendant Humber, whom he aided and abetted (aiding-and-abetting liability), and (3) that were solicited by a co-conspirator during and in furtherance of the charged conspiracy and were reasonably foreseeable (*Pinkerton* liability). *See* Ninth Circuit Pattern Jury Instructions 5.1 (aiding and abetting), 8.25 (*Pinkerton* charge).

The *actus reus* elements of Counts Two through Five are predicated on the following categories of conduct by Defendants Allison and Humber:

- Posting messages in Terrorgram chats and channels soliciting bias-motivated violence against targeted groups, including, but not limited to, the posts and messages detailed in Paragraphs 16, 27, and 28 of the General Allegations of the Indictment;

- Disseminating materials designed to "create[] an environment where aspiring attackers are increasingly willing to perpetrate violence as a way to honor previous 'saints,' attain sainthood themselves, and inspire future attacks," as Defendant Humber put it, including, but not limited to, the materials detailed in Paragraphs 8 and 19-26 of the General Allegations of the Indictment;

- Disseminating The Hard Reset and individual pages of The Hard Reset that solicit bias-motivated violence against targeted groups, including, but not limited to, Pages 142-43

GOVERNMENT'S RESPONSE TO DEFENDANT'S
MOTION FOR BILL OF PARTICULARS

5

(Fumigate the Cities), Pages 192-93 (Forcing Accountability), Page 201 (Mutual Combat), Page 202 (Churchgoers), Page 203 (Two Birds, One Stone), Page 232 (Deportation), Page 244 (Border Crisis), and Page 247 (A Letter to the Next Disciples); and

- Disseminating The List, individual List cards, and links to The List archive via Terrorgram direct messages, group chats, and channels—along with exhortatory comments including, but not limited to, "Take Action Now"; "Do your part"; "Remember change starts with you. No one is coming to save us."; and "The List would do for killing what the printing press had done for literacy."  As detailed in Paragraphs 9-15 of the General Allegations of the Indictment, The List is a hit list of "high value targets" that includes federal, state, and municipal officials, and leaders of private companies and NGOs, many of whom were targeted for assassination because of their race, religion, national origin, sexual orientation, and/or gender identity.

Defendant Allison's request for a list of specific targets and solicitees for Counts 2-5 overlooks that solicitation charges do not require proof of a specific target or solicitee. *See, e.g., United States v. White*, 698 F.3d 1005, 1016 (7th Cir. 2012) ("Though the government did not present a specific 'solicitee,' it was unnecessary to do so given the very nature of the solicitation—an electronic broadcast which, a reasonable jury could conclude, was specifically designed to reach as many white supremacist readers as possible so that *someone* could kill or harm [the target].  18 U.S.C. § 373 requires proof of intent 'that another person' commit the felony, and [defendant's] desire for any reader to respond to his call satisfies this requirement."); *United States v. Walthall*, 130 F.4th 791, 797 (9th Cir. 2025) (explaining that "[w]hat matters," for the federal solicitation statute, "is the defendant's 'intent that another person' commit an act of violence, not that the other person actually be prepared to do so or even that the other person exist"); *United States v. McNeil*, 228 F. Supp. 3d 809, 817 (N.D. Ohio 2017), *aff'd* 744 F. App'x 941 (6th Cir. 2018) (affirming solicitation conviction predicated on defendant's social media messages exhorting his followers to murder members of the U.S. military); *United States v. Sattar*, 272 F.Supp.2d 348, 374 (S.D.N.Y. 2003) (denying motion to dismiss solicitation charge predicated on defendant's issuance of a fatwah to "fight the Jews and to kill them wherever they are"), *aff'd sub nom. United States v. Stewart*, 590 F.3d 93, 99 (2d Cir. 2009).

Defendant Allison's assertion that he "cannot adequately prepare a First Amendment defense" to the hate crime solicitation charges without the requested bill of particulars rests on the faulty assumption

that a First Amendment challenge to those charges would be suitable for resolution before trial.  It would not be.  It is settled law that a motion to dismiss a criminal indictment is not ripe for resolution before trial unless the facts and evidence upon which the motion is based are undisputed or immaterial to the outcome. *See United States v. Nukida*, 8 F.3d 665, 669-70 (9th Cir. 1993) (explaining that "[i]f the pretrial claim is substantially founded upon and intertwined with evidence concerning the alleged offense, the motion falls within the province of the ultimate finder of fact and must be deferred"); *United States v. Phillips*, 367 F.3d 846, 855 (9th Cir. 2004) (finding that district court's pretrial resolution of defendant's motion to dismiss was proper only because the facts were "undisputed" and "the court was faced with a pure issue of law").  The point at which words cross the line from protected speech to true threats or criminal incitement or solicitation "is a question of fact for the jury, not a question of law for the court." *Melugin v. Hames*, 38 F.3d 1478, 1485 (9th Cir. 1994).  The facts and evidence supporting Defendant Allison's hate crime solicitation charges, which are disputed and material to the resolution of any First Amendment challenge, will not be introduced until trial, so any First Amendment challenge cannot be resolved until trial. *See United States v. Cardozo*, No. 1:18-CR-10251-ADB, 2019 WL 2603096, at *5 (D. Mass. June 24, 2019) ("A jury properly instructed will ultimately determine whether the statements fall under the true-threat exception to First Amendment protection or not, but the factual dispute will not be resolved pretrial on a motion to dismiss.").  A court's resolution of disputed material facts underlying a First Amendment challenge in order to decide a pretrial motion to dismiss would "invade the province of the ultimate finder of fact": the jury. *Nukida*, 8 F.3d at 669.

Count Twelve

Count Twelve charges Defendant Allison with knowingly transmitting in interstate commerce a communication containing a threat to injure another person, in violation of 18 U.S.C. § 875(c).  Count Twelve includes three theories of liability: (1) direct liability, (2) aiding-and-abetting liability, and (3) *Pinkerton* liability.  Under these theories of liability, Defendant Allison is criminally responsible for threats (1) that he personally transmitted (direct liability), (2) that were transmitted by Defendant Humber, whom he aided and abetted (aiding-and-abetting liability), and (3) that were transmitted by a co-conspirator during and in furtherance of the charged conspiracy and were reasonably foreseeable (*Pinkerton* liability). *See* Ninth Circuit Pattern Jury Instructions 5.1 (aiding and abetting), 8.25 (*Pinkerton* charge).

GOVERNMENT'S RESPONSE TO DEFENDANT'S
MOTION FOR BILL OF PARTICULARS

7

The *actus reus* element of Count Twelve is predicated on the Defendants' dissemination of The List, individual List cards, and links to The List archive via Telegram direct messages, group chats, and channels—along with exhortatory comments including, but not limited to, "Take Action Now"; "Do your part"; "Remember change starts with you. No one is coming to save us."; and "The List would do for killing what the printing press had done for literacy."  The United States has provided the defense with discovery materials documenting each and every time that the Defendants disseminated The List via Terrorgram direct messages, chats, and channels.

The List, like the "wanted" posters in *Planned Parenthood of Columbia/Willamette, Inc. v. Am. Coal. of Life Activists ("PPCW")*, 290 F.3d 1058, 1085-86 (9th Cir. 2002) (en banc), was a hit list of targets for assassination and thus qualifies as a true threat exempt from First Amendment protection. Both "connote something they do not literally say" but have an unmistakable message: "You'll be shot or killed." *Id.* at 1085.  Both were "personally targeted" but "publicly distributed" to audiences whom the distributors had reason to believe would attack the identified targets—indeed, that was the whole point: to induce others to kill their enemies. *Id.* at 1085-86.  By creating and disseminating The List, the Defendants were "not staking out a position of debate but of threatened demise"; such conduct "lacks any protection under the First Amendment." *Id.* at 1086; s*ee also United States v. Turner*, 720 F.3d 411, 413–14 (2d Cir. 2013) (rejecting First Amendment challenge to threats conviction, explaining: "Turner did not merely advocate law violation or express an abstract desire for the deaths of Judges Easterbrook, Bauer, and Posner. He posted photographs, work addresses and room numbers for each of the judges, along with a map and photograph of the courthouse"); *United States v. Wheeler*, 776 F.3d 736, 745 (10th Cir. 2015) ("Exhorting groups of followers to kill specific individuals can produce fear in a recipient no less than more traditional forms of threats. Allowing defendants to seek refuge in the First Amendment simply by phrasing threats as exhortations would, as the *Turner* court observed, leave the state 'powerless against the ingenuity of threateners.'").

Counts Thirteen and Fourteen

Counts Thirteen and Fourteen charge Defendant Allison with disseminating bombmaking instructions with the intent to incite a crime of violence, in violation of 18 U.S.C. § 842(p).  Counts Thirteen and Fourteen include three theories of liability: (1) direct liability, (2) aiding-and-abetting

GOVERNMENT'S RESPONSE TO DEFENDANT'S
MOTION FOR BILL OF PARTICULARS

liability, and (3) *Pinkerton* liability.  Under these theories of liability, Defendant Allison is criminally responsible for bombmaking instructions (1) that he personally disseminated (direct liability), (2) that were disseminated by Defendant Humber, whom he aided and abetted (aiding-and-abetting liability), and (3) that were disseminated by Defendant Humber during and in furtherance of the charged conspiracy and were reasonably foreseeable (*Pinkerton* liability). *See* Ninth Circuit Pattern Jury Instructions 5.1 (aiding and abetting), 8.25 (*Pinkerton* charge).

The *actus reus* elements of Counts Thirteen and Fourteen are predicated on the following categories of conduct by Defendants Allison and Humber:

- Posting messages in Terrorgram chats and channels disseminating instructional manuals and videos on how to create bombs, chemical weapons, and weapons of mass destruction, including, but not limited to, a five-step instructional video titled, "How To Make a Letter Bomb."  The video explained how to obtain ingredients for the explosive mixture and the fuse; how to mix the ingredients to create the explosive; how to synthesize the fuse paste; how to rig a padded envelope; how to find the location of a "federal building" that would be "a suitable target"; and how to commit the crime without being caught;

- Disseminating links and invitations to Terrorgram channels administered by Defendants Allison and Humber that served as archives for instructional manuals and videos on how to create bombs, chemical weapons, and weapons of mass destruction, including, but not limited to, the following Terrorgram channels: Forbidden PDFs, Crimepilled, Redpills, Terror Archives, Little Based Library, Small Cabin Enjoyers, and Hail Holy Terror [Private];

- Disseminating The Hard Reset (and individual pages of The Hard Reset), a Terrorgram publication that (1) includes instructions for how to make bombs, chemical weapons, and weapons of mass destruction, including, but not limited to, napalm, black powder, thermite, and chlorine gas (Pages 56-57), pipe bombs (Pages 71-72), and a "dirty bomb"—a bomb comprised of explosives and radioactive material (Pages 142-43); (2) provides tactical advice for how to successfully carry out bombings and mass-casualty attacks, including, but not limited to, Page 10 (Personal Space), Page 68 (Anonymous Bomber), Pages 71-72 (Empty Threats), Pages 163-65 (How to Create and Operate Cells), Page 208 (Dry Run), and Page 247 (A Letter to the Next

GOVERNMENT'S RESPONSE TO DEFENDANT'S
MOTION FOR BILL OF PARTICULARS

9

Disciples); and (3) identifies suitable targets for bombings and mass-casualty attacks, including federal employees as well as groups of people because of their race, religion, national origin, sexual orientation, and gender identity, including but not limited to, Page 75 (Executing an Agent), Pages 142-43 (Fumigate the Cities), Pages 192-93 (Forcing Accountability), Page 201 (Mutual Combat), Page 202 (Churchgoers), Page 203 (Two Birds, One Stone), Page 232 (Deportation), Page 244 (Border Crisis), and Page 247 (A Letter to the Next Disciples).

Defendant Allison's observation that none of the bombmaking instructions disseminated by the defendants were connected "to any attempt [to] kill or assault a federal employee or official" or "to any specific federal hate crime" overlooks that the offenses charged in Counts Thirteen and Fourteen do not require proof that anyone used the bombmaking instructions in an attempt to commit the predicate offenses. Just as solicitation is a completed offense whether or not anyone acted on it, *United States v. White*, 610 F.3d 956, 960 (7th Cir. 2010) ("In the case of a criminal solicitation, the speech—asking another to commit a crime—is the punishable act. Solicitation is an inchoate crime; the crime is complete once the words are spoken with the requisite intent, and no further actions from either the solicitor or the solicitee are necessary."), the same is true with respect to the federal bombmaking instructions statute. Enacted in the wake of the Oklahoma City bombing, § 842(p)(2)(A)—the offense charged in Counts Thirteen and Fourteen—makes it a crime to disseminate bombmaking instructions *with the intent* that the information be used to commit a crime of violence, regardless of whether anyone acted upon it. *See United States v. Coronado*, 461 F. Supp. 2d 1209, 1216 (S.D. Cal. 2006) ("[T]he reach of the statute is directed . . . to conduct or a call for action where the teaching or demonstration of such destructive devices is committed with the specific intent that such teaching or demonstration be used to carry-out a federal crime of violence."). Defendant Allison's dissemination of bombmaking instructions to like-minded accelerationists with the hope and intent that they would use those bombmaking instructions to carry out a mass-casualty attack in furtherance of their shared mission violates § 842(p)(2)(A).

Count Fifteen

Count Fifteen charges Defendant Allison with conspiring to provide material support to terrorists, in violation of 18 U.S.C. § 2339A.

The "material support or resources" that Defendants Allison and Humber conspired to provide,

GOVERNMENT'S RESPONSE TO DEFENDANT'S
MOTION FOR BILL OF PARTICULARS

10

in the form of "services, property, personnel, training, and expert advice or assistance," as charged in Count Fifteen, include the following categories of evidence:

- The categories of conduct, listed above, on which Counts Two through Five and Twelve through Fourteen are predicated;

- Posting messages in Terrorgram chats and channels soliciting attacks on energy facilities, federal buildings, and other critical government infrastructure, and providing guidance on how to successfully carry out such attacks, including, but not limited to, the posts and messages detailed in Paragraph 17 of the General Allegations of the Indictment;

- Disseminating The Hard Reset (and individual pages of The Hard Reset), a Terrorgram publication that includes detailed instructions for how to commit terrorist attacks on critical infrastructure—including, but not limited to, trains (Pages 90-93), cell towers (Pages 94-96), trucks and depots (Pages 97-99), roads, bridges, and highways (Pages 100-02), water treatment and distribution centers (Pages 103-05), commercial businesses (Pages 106-09), communication centers (Pages 110-11), the electrical grid (Pages 112-15), and HVAC systems (Pages 116-17)—and how to successfully plan and carry out such attacks without getting caught (Pages 154-55, 163-65, and 208);

- Recruiting, radicalizing, equipping, advising, inspiring, and soliciting others to commit attacks in furtherance of Terrorgram's mission, as detailed in the "Manner and Means" section of Count One of the Indictment; and

- Maintaining a digital and physical storage facility to archive Terrorgram materials for future dissemination, and using that archive and Defendant Allison's computing expertise to circumvent "user bans," "channel bans," and other attempts by Telegram to moderate or remove Terrorgram content from its digital platform.

For examples of cases holding that the above-listed categories of evidence qualify as "material support or resources" under 18 U.S.C. §§ 2339A and B, *see United States v. Blanco*, 102 F.4th 1153, 1157-58 (11th Cir. 2024) (material support conviction predicated on, among other things, defendant's use of social media accounts devoted to the "production and dissemination of ISIS propaganda, recruiting materials, and instructional guides for committing acts of terror"); *United States v. Osadzinski*, 97 F.4th

GOVERNMENT'S RESPONSE TO DEFENDANT'S
MOTION FOR BILL OF PARTICULARS

11

484, 486 (7th Cir. 2024) (material support conviction predicated on defendant's creation of "a computer program that allowed ISIS . . . and its followers to rapidly duplicate terrorist propaganda videos online and thereby to stay a step ahead of efforts by the United States and other western governments to thwart the organization's media campaign"); *United States v. Rahim*, 860 Fed. App'x 47, 50-53 (5th Cir. 2021) (per curiam) (material support conviction predicated on defendant's moderation of a social media channel designed to encourage people to join ISIS and to incite people to commit terrorist attacks in ISIS's name, which "permitted the growth of a community of ISIS followers, allowing them to mobilize and make the leap from talk to action"); *United States v. Mustafa*, 406 F. App'x 526, 530 (2d Cir. 2011) (summary order) (material support conviction predicated on defendant's "disseminati[on of] training manuals on the Internet for the benefit of al-Qaeda," which the Court found, "implicates the core meaning of a statute that proscribes knowingly providing training and expert advice or assistance"); *United States v. Dais*, 482 F. Supp. 3d 800, 801-08 (E.D. Wis. 2020) (material support conviction predicated on defendant's use of social media platforms (1) to give advice on how to make explosive devices and poison, prepare for an attack, and select targets, and (2) to promote ISIS, recruit adherents, collect information on how to conduct terrorist attacks, and distribute that information to individuals interested in conducting such attacks).

**III.    Conclusion**

Defendant Allison's motion for bill of particulars should be denied on the merits, for the reasons set forth in Part I; or in the alternative, should be denied as moot based on the government's notice of categories of evidence and theories of liability supporting Counts 2-5 and 12-15, as set forth in Part II.

Dated: February 13, 2026

| | | |
|---|---|---|
| ERIC GRANT | HARMEET K. DHILLON | JOHN A. EISENBERG |
| United States Attorney | Assistant Attorney General | Assistant Attorney General |
| Eastern District of California | Civil Rights Division | National Security Division |
| | | |
| /s/ *Robert Abendroth* | /s/ *Christopher J. Perras* | /s/ *Patrick Cashman* |
| ROBERT ABENDROTH | CHRISTOPHER J. PERRAS | PATRICK CASHMAN |
| Assistant U.S. Attorney | Special Litigation Counsel | Trial Attorney |