IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA


UNITED STATES OF AMERICA,
        PLAINTIFF,

VS.                                SACRAMENTO, CALIFORNIA
                                   NO. 2:24-CR-00257
DALLAS ERIN HUMBER,                WED., DEC. 17, 2025
        DEFENDANT.                 9:39 A.M.
_____/

TRANSCRIPT OF JUDGMENT AND SENTENCING
BEFORE THE HONORABLE DENA M. COGGINS, DISTRICT JUDGE
---oOo---


APPEARANCES:

  FOR THE PLAINTIFF:              U.S. DEPARTMENT OF JUSTICE
                                  950 PENNSYLVANIA AVE. NW
                                  WASHINGTON, DC  20530
                                  BY:  CHRISTOPHER J. PERRAS
                                  SPECIAL LITIGATION COUNSEL
                                  PATRICK CASHMAN
                                  TRIAL ATTORNEY

  FOR THE PLAINTIFF:              UNITED STATES ATTORNEY
                                  501 I STREET, SUITE 10-100
                                  SACRAMENTO, CALIFORNIA 95814
                                  BY: ROBERT ABENDROTH
                                  ASSISTANT US ATTORNEY

  FOR THE DEFENDANT:             OFFICE OF THE FEDERAL
                                  DEFENDER
                                  801 I STREET, 3RD FLOOR
                                  SACRAMENTO, CALIFORNIA  95814
                                  BY: NOA OREN
                                  ASSISTANT FEDERAL DEFENDER

  OFFICIAL COURT REPORTER:        KIMBERLY M. BENNETT
                                  CSR, RPR, RMR, CRR
                                  501 I STREET
                                  SACRAMENTO, CA 95814


PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY, TRANSCRIPT
PRODUCED BY COMPUTER-AIDED TRANSCRIPTION

(CALL TO ORDER OF THE COURT, 9:39 A.M.)

THE CLERK:  CALLING CRIMINAL CASE NO. 24-257, UNITED STATES VERSUS DALLAS ERIN HUMBER.

THIS IS ON CALENDAR FOR JUDGMENT AND SENTENCING.

THE COURT:  ALL RIGHT.  GOOD MORNING, EVERYONE.

LET'S GIVE MS. OREN AN OPPORTUNITY TO MOVE HER THINGS.

ALL RIGHT.  COUNSEL, STATE YOUR APPEARANCES FOR THE RECORD.

MR. PERRAS:  GOOD MORNING, YOUR HONOR.  CHRIS PERRAS FOR THE UNITED STATES.  WITH ME IS AUSA ROB ABENDROTH FROM THE EASTERN DISTRICT OF CALIFORNIA, AND TRIAL ATTORNEY PATRICK CASHMAN FROM THE NATIONAL SECURITY DIVISION.

THE COURT:  THANK YOU.

MS. OREN:  GOOD MORNING, YOUR HONOR.  NOA OREN FROM THE FEDERAL DEFENDER'S OFFICE APPEARING ON BEHALF OF MS. HUMBER, WHO IS PRESENT, STANDING BESIDE ME, IN CUSTODY.

THE COURT:  ALL RIGHT.  GOOD MORNING, MS. HUMBER.

WE'RE HERE THIS MORNING FOR JUDGMENT AND SENTENCE.

FIRST, THE COURT IS GOING TO TURN TO GOVERNMENT'S REQUEST TO SEAL DOCUMENTS.  AND THOSE ARE EXHIBITS TO THE GOVERNMENT'S SENTENCING MEMORANDUM.  THE COURT HAS REVIEWED THE REQUEST.

IS THERE ANY OBJECTION TO THE COURT GRANTING THE REQUEST, MS. OREN?

MS. OREN:  NO OBJECTION, YOUR HONOR.

THE COURT:  ALL RIGHT.  THE COURT FINDS COMPELLING INTEREST TO SUPPORT GRANTING THE REQUEST AS IDENTIFIED BY THE

GOVERNMENT IN THIS REQUEST.  THE REQUEST IS GRANTED.  THE COURT WILL SIGN THE PROPOSED ORDER.

ON AUGUST 8, 2025, MS. HUMBER PLED GUILTY TO A 15-COUNT INDICTMENT.  THERE IS A WRITTEN PLEA AGREEMENT PURSUANT TO RULE 11(C)(1)(C).  THE PLEA AGREEMENT SETS FORTH THE PARTIES' AGREEMENT, INCLUDING THAT A SENTENCE OF INCARCERATION FROM 25 YEARS MINIMUM TO 30 YEARS MAXIMUM, FOLLOWED BY A LIFETIME PERIOD OF SUPERVISED RELEASE IS A JUST AND APPROPRIATE DISPOSITION OF THIS CASE.  THE COURT DEFERRED ACCEPTANCE OF THE PLEA AGREEMENT PURSUANT TO THAT SAME RULE PENDING ITS REVIEW OF THE PRESENTENCE REPORT AND THE PARTIES' SENTENCING SUBMISSIONS, MEMORANDA, OBJECTIONS, AND THERE WAS ALSO A SUPPLEMENTAL DOCUMENT THAT WAS PROVIDED WITH AN EXHIBIT.  THE COURT HAS REVIEWED THOSE DOCUMENTS.

THE COURT MAY ACCEPT THE AGREEMENT IF THE COURT IS SATISFIED THAT THE AGREED SENTENCE IS OUTSIDE THE APPLICABLE GUIDELINE RANGE FOR JUSTIFIABLE REASONS.  AND THOSE REASONS ARE SET FORTH WITH SPECIFICITY IN THE STATEMENT OF REASONS FORM.

I'M GOING TO ASK THE GOVERNMENT -- I'LL NOTE THAT THE GOVERNMENT DID SUBMIT SENTENCING A MEMORANDUM INDICATING REASONS.  I'D ASK THAT THE GOVERNMENT PUT ON THE RECORD THE REASONS JUSTIFYING A SENTENCE OUTSIDE THE APPLICABLE GUIDELINE RANGE.

MR. PERRAS:  YES, YOUR HONOR.

THE GOVERNMENT HAS IDENTIFIED FIVE JUSTIFIABLE AND

COMPELLING REASONS TO ACCEPT THIS PLEA AGREEMENT AND SENTENCE THIS DEFENDANT TO A BELOW-GUIDELINES SENTENCE OF A TERM BETWEEN 25 AND 30 YEARS.

THE FIRST BEING, AND I THINK ONE OF THE MOST IMPORTANT IS, CERTAINTY AND FINALITY.  SO, ACCEPTING THIS PLEA AGREEMENT WOULD ENSURE THAT A WHITE SUPREMACIST TERRORIST, RESPONSIBLE FOR INCITING THE MURDERS OF INNOCENT PEOPLE AROUND THE WORLD, IS HELD ACCOUNTABLE FOR HER CRIMES AND PUT IN PRISON IN A SECURE BOP FACILITY WHERE SHE CAN NO LONGER COMMIT SIMILAR CONDUCT.

IT WOULD SAVE THE COURT AND THE GOVERNMENT A SUBSTANTIAL AMOUNT OF TIME AND RESOURCES -- TIME AND RESOURCES THAT COULD BE REDEPLOYED IN THE SERVICE OF JUSTICE IN OTHER WAYS.

IT WOULD ACCOUNT FOR THE MITIGATING FACTORS IDENTIFIED IN THE PSR THAT JUSTIFY A BELOW-GUIDELINES SENTENCE, INCLUDING THE DEFENDANT'S EARLY AND FULL ACCEPTANCE OF RESPONSIBILITY.  AND, MORE IMPORTANTLY, THE DEFENSE -- THE DEFENDANT'S EXTENSIVE HISTORY OF TRAUMA, WHICH THE GOVERNMENT DOES NOT CONTEST.

AND, FINALLY, YOUR HONOR, WE'D SUBMIT THAT ACCEPTING THE PLEA AGREEMENT AND SENTENCING THIS DEFENDANT TO A TERM OF IMPRISONMENT BETWEEN 25 AND 30 YEARS WOULD ALIGN THE DEFENDANT'S SENTENCE WITH THE SENTENCES OF SIMILARLY SITUATED DEFENDANTS AND THUS PROMOTE THE INTEREST IN SENTENCING UNIFORMITY.

SO, YOUR HONOR, FOR ALL OF THOSE REASONS, WE WOULD SUBMIT

THAT THE COURT HAS JUSTIFIABLE REASONS TO ACCEPT THE BINDING PLEA AGREEMENT AND CONCLUDE THAT IT SERVES THE INTERESTS OF JUSTICE.

THE COURT:  MS. OREN, I DIDN'T SEE IN THE MEMORANDUM ANY SPECIFICS PROVIDED FOR JUSTIFIABLE REASONS.  I JUST WANTED TO GIVE YOU AN OPPORTUNITY IF YOU WOULD LIKE TO ADD ANYTHING ADDITIONAL.

MS. OREN:  WE WOULD AGREE WITH THE GOVERNMENT, YOUR HONOR.  AND ESPECIALLY THE MITIGATING FACTORS RELATED TO HER PERSONAL CHARACTERISTICS, WHICH THEY INCLUDE AS NUMBER FOUR FOR THEIR REASONS.

THE COURT:  ALL RIGHT.  THE DECISION OF WHETHER TO ACCEPT OR REJECT THE BINDING PLEA AGREEMENT CAN'T BE TAKEN LIGHTLY, HASN'T BEEN TAKEN LIGHTLY BY THIS COURT, AND THE COURT HAS SET IT OUT TO FURTHER CONSIDER IT.  THE COURT MUST ENSURE IN THIS CASE THAT THERE ARE JUSTIFIABLE REASONS TO ACCEPT THE PARTIES' AGREED SENTENCE THAT IS CLEARLY OUTSIDE THE APPLICABLE GUIDELINE RANGE.

THE COURT FINDS THAT THE CERTAINTY OF A LENGTHY PRISON SENTENCE, AS SET FORTH IN THE PLEA AGREEMENT, FOR AT LEAST A QUARTER CENTURY, IF NOT MORE, IS APPROPRIATE HERE; THEREFORE, THE COURT FINDS THERE ARE JUSTIFIABLE REASONS, AS SET FORTH BY THE PARTIES, TO ACCEPT THE PLEA AGREEMENT OF THE PARTIES.

THIS MORNING, THE COURT WILL FIRST ADDRESS IF THERE ARE ANY OBJECTIONS TO THE PRESENTENCE REPORT AND GUIDELINE CALCULATION,

DETERMINE THE ADVISORY SENTENCING GUIDELINE RANGE, ALLOW THE GOVERNMENT, THE ATTORNEYS, AND MS. HUMBER TO ADDRESS THE COURT. THE COURT WILL ALSO HEAR FROM VICTIMS.  THE COURT WILL THEN STATE THE SENTENCE.

THE MATTER WAS REFERRED TO THE PROBATION OFFICE FOR A PRESENTENCE EVALUATION AND REPORT, WHICH THE COURT HAS READ AND CONSIDERED.  THE COURT HAS ALSO CONSIDERED THE GOVERNMENT'S FORMAL OBJECTIONS AND SENTENCING MEMORANDUM, THE DEFENDANT'S FORMAL OBJECTIONS AND SENTENCING MEMORANDUM, AND THE DEFENSE' SUPPLEMENTAL SENTENCING MEMORANDUM.

COUNSEL, ANYTHING ELSE I SHOULD HAVE CONSIDERED?

MR. PERRAS:  NO, YOUR HONOR.

THE COURT:  MS. OREN?

MS. OREN:  NO, YOUR HONOR.  THANK YOU.

THE COURT:  MS. OREN, HAVE YOU HAD ENOUGH TIME TO READ THE PRESENTENCE REPORT AND REVIEW IT WITH MS. HUMBER?

MS. OREN:  YES, YOUR HONOR.

THE COURT:  MS. HUMBER, HAVE YOU RECEIVED THAT PRESENTENCE REPORT?

THE DEFENDANT:  YES, YOUR HONOR.

THE COURT:  DID YOU HAVE AN OPPORTUNITY TO DISCUSS IT WITH MS. OREN?

THE DEFENDANT:  YES, YOUR HONOR.

THE COURT:  ALL RIGHT.  AND DID YOU UNDERSTAND IT?

THE DEFENDANT:  YES.

THE COURT:  AND ALL OF YOUR QUESTIONS, IF YOU HAD ANY, WERE THEY ANSWERED BY MS. OREN?

THE DEFENDANT:  YES.

THE COURT:  IS THERE ANY LEGAL CAUSE WHY WE SHOULD NOT PROCEED TO SENTENCING AT THIS TIME, MR. PERRAS?

MR. PERRAS:  NO, YOUR HONOR.

THE COURT:  MS. OREN?

MS. OREN:  NO, YOUR HONOR.

THE COURT:  ALL RIGHT.  I WILL NOTE THAT THERE ARE OBJECTIONS, AS I JUST INDICATED.  WHY DON'T WE START FIRST WITH THE GOVERNMENT'S OBJECTIONS.  I'M GOING TO GO IN REVERSE ORDER, STARTING WITH OBJECTION NUMBER TWO REGARDING THE OFFICIAL VICTIM ENHANCEMENT.

THE GOVERNMENT ASSERTS THAT THE OFFICIAL VICTIM ENHANCEMENT UNDER SECTION 3A1.2 APPLIES TO GROUPS 2 THROUGH 4 BECAUSE THE TARGETED VICTIMS OF THOSE OFFENSES ARE CURRENT OR FORMER GOVERNMENT OFFICIALS, AND THE OFFENSES WERE MOTIVATED BY THEIR OFFICIAL STATUS.  THIS WOULD RESULT IN A SIX-LEVEL INCREASE TO THE ADJUSTED OFFENSE LEVEL OF THOSE GROUPS, INCREASING THE ADJUSTED OFFENSE LEVEL OF 51 -- TO 51 FOR EACH GROUP.  UNDER SECTION 3D1.4, EACH GROUP WOULD BE ASSIGNED ONE UNIT, WHICH WOULD INCREASE THE UNIT TOTAL TO 5.5, BUT THE MAXIMUM TOTAL NUMBER OF UNITS IS 5, THAT'S PURSUANT TO SECTION 3D1.4, AND A COMBINED ADJUSTED OFFENSE LEVEL OF 57.

I WANT TO FIRST ASK, MS. OREN, WOULD YOU LIKE TO BE HEARD

ON THIS OBJECTION?

MS. OREN:  NO, YOUR HONOR.

THE COURT:  ALL RIGHT.  MR. PERRAS WOULD YOU LIKE TO BE HEARD ON THIS OBJECTION?

MR. PERRAS:  NO, YOUR HONOR.

THE COURT:  ALL RIGHT.  AT THIS TIME THE COURT AGREES.  I SUSTAIN THE OBJECTION.  THE COURT WILL MODIFY THE PARAGRAPHS OF THE PRESENTENCE REPORT.  AND I'LL HEAR FROM COUNSEL IF I MISS ANYTHING OR IF YOU DON'T AGREE.

THE COURT WILL MODIFY PARAGRAPH 70 AND NOTE THAT THE ADJUSTED OFFENSE LEVEL SHOULD BE 51.  PARAGRAPH 77, AGAIN ADJUSTING THE OFFENSE LEVEL TO 51.  PARAGRAPH 84, SAME, ADJUSTING THE OFFENSE LEVEL TO 51.

COUNSEL, ANY DISAGREEMENT WITH WHAT I'VE DONE SO FAR?

MS. OREN:  NO, YOUR HONOR.

MR. PERRAS:  NO, YOUR HONOR.

THE COURT:  ALL RIGHT.  IF WE GO TO PARAGRAPH 109, THEN THE ADJUSTMENTS -- IT'S ACTUALLY ON PAGE 24 OF THE PSR, GROUP 2, GROUP 3, AND GROUP 4, ADJUSTED OFFENSE LEVEL WILL REFLECT 51.  THE UNITS, THEN, SAME GROUPS, GROUPS 2, 3, AND 4, WILL ADJUST TO 1.  THAT HAS A TOTAL NUMBER OF UNITS OF -- WOULD BE 5.5, BUT FOR THE REASONS I JUST STATED IT WILL BE 5.0.

ANY CONCERNS THERE?

MR. PERRAS:  NO, YOUR HONOR.

THE COURT:  ALL RIGHT.  WE'RE MOVING DOWN TO 111,

THAT INCREASES TO 5, AS WE'VE JUST NOTED.  SO 112, THAT NUMBER COMBINED ADJUSTED OFFENSE LEVEL INCREASES TO 57.  AND THEN WE GO TO 116.  THE TOTAL OFFENSE LEVEL THEN IS 54 -- I'M SORRY -- THE PARAGRAPH THAT SAYS THE TOTAL -- STARTING AT 116, IN BOLD, TOTAL OFFENSE LEVEL, THE TOTAL OFFENSE LEVEL IS 54, BUT THE NUMBER STILL FOR A TOTAL OFFENSE LEVEL IS 43.

I THINK THAT COVERS EVERYTHING.  BUT, COUNSEL, IF I MISSED SOMETHING OR IF YOU HAVE CONCERNS, LET ME KNOW.

MR. PERRAS:  NO CONCERNS, YOUR HONOR.

THE COURT:  ALL RIGHT.  THEN THAT WILL BE MODIFIED AS JUST INDICATED ON THE RECORD.

LET'S GO TO THE OTHER OBJECTION, TECHNICALLY OBJECTION NUMBER ONE OF THE GOVERNMENT, THAT'S AS TO COUNT 13.

MY UNDERSTANDING IS THE GOVERNMENT IS ASSERTING AS TO COUNT 13 IS PREDICATED ON THE DEFENDANT'S DISSEMINATION OF A VIDEO WITH DETAILED INSTRUCTIONS ON HOW TO BOMB A FEDERAL BUILDING SHOULD NOT BE GROUPED IN GROUP 2 -- GROUP 2 CONTAINS COUNTS 6, 9, AND 12, WHICH ARE PREDICATED ON THE DEFENDANT'S SOLICITATION OF THE MURDER OF FEDERAL OFFICIAL 1 -- BECAUSE THEY ARE PREDICATED ON DIFFERENT CONDUCT THAT INVOLVED DIFFERENT VICTIMS, DIFFERENT ACTS, AND DIFFERENT TRANSACTIONS.

THE GOVERNMENT ASSERTS THAT THE APPROPRIATE OFFENSE GUIDELINE FOR THIS COUNT IS 2K1.3-- THAT'S PROHIBITED TRANSACTIONS INVOLVING EXPLOSIVE MATERIALS -- AND SHOULDN'T BE GROUPED PURSUANT TO 3D1.2.

THAT SUMMARIZED, AGAIN, THAT THE GOVERNMENT IS ASKING THE COURT TO REMOVE COUNT 13 FROM GROUP 2, APPLY 2K1.3 INSTEAD OF 2A1.5, AND USE A CALCULATION FOUND IN THE INFORMAL OBJECTIONS AT DOCUMENT 88, PAGE 44, TO ARRIVE AT A TOTAL OFFENSE LEVEL OF 37 FOR COUNT 13.

DID I GET THAT RIGHT?

MR. PERRAS:  THAT IS CORRECT, YOUR HONOR.

THE COURT:  ALL RIGHT.  SO I DO HAVE SOME QUESTIONS FOR YOU, MR. PERRAS.

WHEN I LOOK AT 2K1.3 -- GIVE ME A MOMENT TO GET THERE -- THERE IS THAT CROSS-REFERENCE WHICH IS FOUND AT (C)(1)(A) INDICATING THAT IF THE DEFENDANT WAS CONVICTED UNDER 18 UNITED STATES CODE SECTION 842(P)(2) THEN THE COURT SHOULD APPLY 2X1.1, ATTEMPT, SOLICITATION, OR CONSPIRACY, IN RESPECT TO THAT OTHER OFFENSE IF THE RESULTING OFFENSE LEVEL IS GREATER THAN THAT DETERMINED ABOVE.

WHAT IS YOUR POSITION ON WHETHER THE COURT SHOULD LOOK TO THAT CROSS-REFERENCE?

MR. PERRAS:  YOUR HONOR, I THINK IT'S AMBIGUOUS.  I THINK THE COURT COULD SENTENCE UNDER 2K1.3(A)(3), WHICH IS WHAT THE -- WHAT WE BRIEFED.  I ALSO THINK THE CROSS-REFERENCE COULD ARGUABLY APPLY, THOUGH IT'S NOT CLEAR WHAT SUBSTANTIVE ATTEMPT, SOLICITATION, OR CONSPIRACY OFFENSE WOULD BE THE PREDICATE FOR THAT.  SO THE 842(P) CHARGE THAT WE'RE TALKING ABOUT WITH RESPECT TO COUNT 13 IS PREDICATED ON THIS DEFENDANT'S

DISSEMINATION OF A HIGH VOLUME OF BOMB MAKING INSTRUCTIONS, BUT INCLUDING ONE PARTICULAR VIDEO IN WHICH SHE INSTRUCTS PEOPLE HOW TO BUILD A BOMB TO BOMB A FEDERAL BUILDING.

THERE WAS NOT A PARTICULAR FEDERAL BUILDING IDENTIFIED IN THAT -- IN THAT VIDEO, AND THERE WAS NOT NECESSARILY A PARTICULAR VICTIM.  BUT I SUPPOSE THE PREDICATE THERE COULD BE AN 844 OFFENSE FOR ARSONS OR EXPLOSIVES USED TO -- TO DESTROY A FEDERAL BUILDING.  SO I THINK -- I THINK THE CROSS-REFERENCE UNDER (C)(A)(1) COULD APPLY IF YOU READ IT THAT WAY.  I THINK ALSO 2K1.3(A)(3) COULD ALSO APPLY, YOUR HONOR.

THE COURT:  SO LET ME ASK, IF THE CROSS-REFERENCE DOES APPLY, AND WE PULLED OUT COUNT 13, WOULD WE BE IN THE SAME PLACE -- THE SAME CALCULATION AS THE OTHER COUNTS IN GROUP 2?

MR. PERRAS:  THIS WOULD ABSOLUTELY NOT CHANGE THE GUIDELINES CALCULATIONS AND THE ULTIMATE CALCULATIONS OF LIFE IN PRISON FOR THIS DEFENDANT.

THE COURT:  RIGHT.  NO.  AND I AGREE.  AND I THINK THAT THE GOVERNMENT HAS SET OUT THE -- THAT EVEN IF THE COURT WERE TO SUSTAIN BOTH OBJECTIONS, IT DOESN'T CHANGE -- CHANGE THE GUIDELINE.

BUT JUST AS FAR AS THE ADJUSTED OFFENSE LEVEL, IT SEEMS TO ME IF THE CROSS-REFERENCE APPLIES WE GO BACK TO 2A1.5, AND WE'RE AT A TOTAL OFFENSE LEVEL OF 51, SAME AS THE OTHERS IN GROUP 2.

MR. PERRAS:  YES.

THE COURT: OKAY. ALL RIGHT.

MS. OREN, WOULD YOU LIKE TO ADD TO THE DISCUSSION?

MS. OREN: NO, YOUR HONOR.

THE COURT: ALL RIGHT. AT THIS TIME THE COURT -- I DO AGREE THAT COUNTS IN GROUP 2 ARE PREDICATED ON DIFFERENT VICTIMS, ACTS, AND TRANSACTIONS, AND TWO OR MORE ACTS OR TRANSACTIONS CONNECTED BY A COMMON CRIMINAL OBJECTIVE OR CONSTITUTING PART OF A COMMON PLAN OR SCHEME HAVEN'T BEEN SHOWN FOR PURPOSES OF 3D1.2.

THE COURT THEN LOOKS TO THE TOTAL OFFENSE LEVEL. I'M LOOKING AT -- I THINK THE CROSS-REFERENCE SEEMS TO APPLY HERE. THE CROSS-REFERENCE APPLIES, THEN THE CALCULATION IS SIMILAR TO GROUP 2 -- EXACTLY THE SAME. MEANING THAT ON -- UNDER 109, PULLING GROUP -- OUT OF GROUP 2 COUNT 13, AND HAVING COUNT 13 AS A STANDALONE, THEN THE ADJUSTED OFFENSE LEVEL IS 51. THAT AGAIN GETS US TO ONE UNIT. THAT PUTS US OVER THE 5.0. THAT STILL STAYS THE SAME. SO I'LL JUST NOTE THAT FOR THE RECORD, THAT THAT MODIFICATION WILL BE MADE BUT IT DOESN'T CHANGE THE TOTAL OFFENSE LEVEL OF 43.

COUNSEL, WOULD YOU LIKE TO BE HEARD ANY FURTHER ON THAT?

MR. PERRAS: NO, YOUR HONOR.

THE COURT: ALL RIGHT. PROBATION?

PROBATION OFFICER: NO.

THE COURT: I THINK THAT ADDRESSES THE OBJECTIONS FROM THE GOVERNMENT.

WHY DON'T WE GO TO THE OBJECTIONS FROM MS. HUMBER.

THERE ARE WHAT'S BEEN TITLED FOUR OBJECTIONS.  I DON'T KNOW THAT THEY'RE ACTUALLY OBJECTIONS, BUT WE CAN TALK ABOUT IT, MS. OREN.

MS. HUMBER PROVIDED A DOCUMENTARY TO SUPPORT SHE DID NOT GROOM 19-YEAR-OLD JURAJ KRACIK, AND STATES THIS SHOULD BE NOTED FOR THE RECORD.

THE COURT HAS REVIEWED THE EVIDENCE SUBMITTED BUT DOES NOT FIND THAT THE DOCUMENTARY SUPPORTS THE DEFENDANT'S POSITION THAT MS. HUMBER DID NOT GROOM JURAJ KRACIK.  THE COURT WILL CONSIDER THAT THE TWO OTHER LEADERS ARGUABLY HAD A WIDER REACH ON THE RELEVANT CHANNELS.

AS TO WHAT'S BEEN NOTED AS OBJECTION 2, IT'S A REQUEST FOR A CORRECTION OF A TYPO.  ALTHOUGH, I DON'T ACTUALLY SEE THE TYPO, MS. OREN.  I -- IT -- SPECIFICALLY WHAT THE OBJECTION SAYS IS THAT IT'S SEEKING TO CORRECT THE PSR TO REFLECT THAT MS. HUMBER DOES NOT OBJECT TO THE RESTITUTION REQUEST FOR INSTALLATION OF A SECURITY SYSTEM.  IN THE FINAL PSR, I DON'T THINK THERE IS ANY INDICATION THAT SHE IS OBJECTING TO IT.  SO IS THERE A SPECIFIC TYPO IN THE FINAL?

MS. OREN:  YES, IN THE LAST LINE.  BUT IT DOESN'T -- IT'S NOT THAT IMPORTANT.  BUT IT'S NOT "INSTILLATION," IT'S THE INSTALLATION OF SECURITY SYSTEM.

THE COURT:  I SEE.  OKAY.  GOT IT.  WE'LL CHANGE IT TO INSTALLATION.  THAT'S WHAT I RECOGNIZED IT TO BE, AND I

UNDERSTAND MS. HUMBER DOESN'T OBJECT TO THAT.

AS TO OBJECTION NUMBER 3 -- WHAT'S BEEN TITLED OBJECTION NUMBER 3, IT'S JUST NOTING TO THE COURT THAT THERE IS AN ATTACHMENT OF RECORDS FOR MR. GANTT'S CONVICTION.  THE COURT HAS REVIEWED THOSE RECORDS.

AS TO WHAT'S BEEN TITLED OBJECTION 4, IT STATES THAT A PINEAL CYST CAN BE EVIDENCE OF TRAUMATIC BRAIN INJURY.  THE COURT REVIEWED THE DOCUMENTS CITED.  THE ARTICLE INDICATES THAT SOME CYSTS MIGHT FORM BECAUSE OF A HEAD INJURY OR OTHER TRAUMA TO THE BRAIN.  THERE IS NO INDICATION IN THE PARAGRAPH WHICH TYPE OF CYST THE AUTHOR IS REFERRING TO, AND THOUGH LATER IN THE ARTICLE IT DOES TALK ABOUT THIS SPECIFIC CYST, BUT IT'S NOT IN THAT PARAGRAPH.  THAT SAME PARAGRAPH SAYS THAT THE BRAIN CYST CAN ALSO FORM DURING THE FIRST FEW WEEKS WHEN A BABY IS GROWING IN THE UTERUS.  SO, I HAVE REVIEWED THAT DOCUMENT.

WOULD COUNSEL LIKE TO BE HEARD ON ANY OF THOSE WHAT HAVE BEEN TITLED OBJECTIONS?

MR. PERRAS:  NO, YOUR HONOR.

THE COURT:  ALL RIGHT.  COUNSEL, HAVE I ADDRESSED ALL OF YOUR CONCERNS AND OBJECTIONS AS TO THE PRESENTENCE REPORT AS OUTLINED IN THE OBJECTION SECTIONS OF YOUR MEMORANDA?

MR. PERRAS:  YES, YOUR HONOR.

MS. OREN:  YES, YOUR HONOR.

THE COURT:  ALL RIGHT.  OTHER THAN THE ISSUES I'VE JUST DISCUSSED, THE COURT ADOPTS THE FINDINGS OF THE

PRESENTENCE REPORT AND DETERMINES THAT THEY ARE TRUE AND CORRECT.

ALL RIGHT.  SO THE APPLICABLE OFFENSE LEVEL, WHICH WE TALKED ABOUT A LOT TODAY, IS 43.  THE DEFENDANT'S CRIMINAL HISTORY PLACES HER IN CATEGORY VI.  THE GUIDELINES RANGE IS 2,640 MONTHS IN PRISON.

AT THIS TIME THE SENTENCING GUIDELINES ARE ONLY THE BEGINNING POINT TO THE SENTENCING PROCESS.  IN ADDITION TO THE GUIDELINES RANGE, THE COURT WILL CONSIDER THE STATUTORY FACTORS SET FORTH IN 18 UNITED STATES CODE SECTION 3553(A).  THOSE FACTORS INCLUDE THE NATURE AND CIRCUMSTANCES OF THE OFFENSE, MS. HUMBER'S HISTORY AND CHARACTERISTICS, THE NEED FOR THE SENTENCE IMPOSED TO REFLECT THE SERIOUSNESS OF THE OFFENSE, PROVIDE JUST PUNISHMENT, AFFORD ADEQUATE DETERRENCE, PROTECT THE PUBLIC, PROVIDE MS. HUMBER WITH NEEDED EDUCATIONAL OR VOCATIONAL TRAINING, MEDICAL CARE, OTHER CORRECTIONAL TREATMENT, THE KINDS OF SENTENCES AVAILABLE AND THE RANGE, POLICY STATEMENTS ISSUED BY THE COMMISSION TO AVOID UNWARRANTED SENTENCING DISPARITIES AMONG DEFENDANTS WITH SIMILAR RECORDS CONVICTED OF SIMILAR CONDUCT, AND TO PROVIDE RESTITUTION.

AT THIS TIME I'LL ASK IF THERE ARE ANY VICTIMS WHO WISH TO MAKE A STATEMENT.  I BELIEVE THAT WE HAVE THREE ON ZOOM.

CAN WE START WITH VICTIM 1?

MR. PERRAS:  YES, YOUR HONOR.

VICTIM 1, ARE YOU PRESENT AND AVAILABLE TO GIVE YOUR

STATEMENT?

VICTIM 1:  I JUST UNMUTED MYSELF.  YES, I AM.  I AM. THANK YOU VERY MUCH FOR GIVING ME THE OPPORTUNITY.

I'M NOT SURE WHAT -- WHAT MORE I CAN ADD TO MY WRITTEN VICTIM STATEMENT THAT I'VE ALREADY SAID, BUT I'M CERTAINLY AVAILABLE FOR ANY -- ANY QUESTIONS THAT YOUR HONOR MAY HAVE FOR ME.

THE COURT:  THANK YOU.

WOULD YOU LIKE TO READ THE STATEMENT AT THIS TIME, MR. PERRAS?

MR. PERRAS:  YES.  VICTIM 1, WOULD YOU PREFER TO READ YOUR STATEMENT?  DO YOU HAVE A COPY IN FRONT OF YOU?  OR SHOULD I READ IT ALOUD INTO THE RECORD?

THE WITNESS:  I'D BE HAPPY TO READ IT, ACTUALLY.  LET ME JUST PULL IT UP HERE.  THANK YOU VERY MUCH FOR GIVING ME THAT OPTION.  I'LL READ IT MYSELF.

OKAY.  DO YOU WANT ME TO ELIMINATE -- OMIT MY NAME?  I TAKE IT -- SINCE I'M JUST "VICTIM 1," I SHOULD OMIT MY NAME, I TAKE IT?

MR. PERRAS:  IT IS YOUR CHOICE, SIR.

THE WITNESS:  OKAY.  YEAH.

I AM CURRENTLY A JUDGE IN ILLINOIS.  I'M ALSO A FORMER ASSISTANT UNITED STATES ATTORNEY IN THE NORTHERN DISTRICT OF ILLINOIS.

IN 2021, I WAS SITTING AS THE JUDGE OF THE DOMESTIC

RELATIONS, OR FAMILY LAW, DIVISION OF THE CIRCUIT COURT OF COOK COUNTY.  IN 2021, THE COVID PANDEMIC WAS STILL RAGING ACROSS THE COUNTRY, AND THE COVID VACCINES HAD JUST COME OUT.  IN THE BEST INTEREST OF THE CHILDREN IN MY FAMILY LAW CASES INVOLVING CHILDREN, NOT ALL OF THEM DID, I FELT IT WAS PRUDENT TO ENCOURAGE PARENTS TO TAKE THE COVID VACCINE, IF FOR NO OTHER REASON THAN TO INCREASE THE CHANCES OF THEIR STAYING ALIVE FOR THE SAKE OF THEIR CHILDREN, IF NOT TO HELP AVOID COMMUNICATING THE VIRUS TO THEIR CHILDREN WHO WERE NOT ELIGIBLE FOR THE VACCINE UNTIL LATER THAT YEAR.

ONE MOTHER WHOM I TRIED TO ENCOURAGE TO GET THE -- TO GET THE COVID VACCINE APPARENTLY DID NOT TAKE KINDLY TO THE SUGGESTION.  SHE FIRST WENT TO THE LOCAL FOX NEWS AFFILIATE IN CHICAGO TO COMPLAIN ABOUT ME.  AFTER THE LOCAL FOX NEWS AFFILIATE AIRED HER STORY, TUCKER CARLSON APPARENTLY PICKED UP THE STORY NATIONALLY AND CALLED ME A "POWER MAD LUNATIC" ON NATIONAL TELEVISION.

ALMOST IMMEDIATELY, THREATS AGAINST ME STARTED POURING IN FROM ALL OVER THE COUNTRY.  MANY OF THEM WERE ANTISEMITIC. EVENTUALLY, MOST OF THEM DIED DOWN, BUT APPROXIMATELY SIX MONTHS LATER, THE UNITED STATES MARSHAL IN CHICAGO MADE ME AWARE OF A PARTICULARLY CONCERNING THREAT AGAINST ME THAT HAD BEEN PUT ON TELEGRAM, WHICH I UNDERSTOOD TO BE A SITE POPULAR WITH PEOPLE WHO WANTED TO HIDE THEIR IDENTITIES BECAUSE IT WAS SO WELL ENCRYPTED.

THE THREAT READ, "MEET --" "MEET ME --" I GUESS I'M TRYING TO KEEP MYSELF ANONYMOUS. "-- THE ILLINOIS JUDGE AND KIKE WHO TOOK AWAY A WHITE WOMAN'S --" CAPITAL W IN WHITE "-- MOTHER'S CHILD BECAUSE SHE REFUSED TO TAKE THE EXPERIMENTAL COVID VACCINATION." MY NAME IS ALSO ACTIVE IN CHICAGO ADL. THAT'S THE ANTIDEFAMATION LEAGUE. AND THEN MY HOME ADDRESS AT THE TIME WAS PRINTED, ALONG WITH A PICTURE OF MY -- MY HOME AT THE TIME, WHICH I LATER LEARNED WAS CALLED DOXING. AGAIN, ACCOMPANYING THE TELEGRAM POST WAS A PHOTO OF THE OUTSIDE OF MY CONDOMINIUM BUILDING AT THE TIME.

IN FACT, I WAS, AND STILL AM, ACTIVE IN CHICAGO ADL. IT'S THE CHICAGO ANTIDEFAMATION LEAGUE. I HAVE BEEN A REGIONAL BOARD MEMBER FOR ABOUT A DECADE NOW, AND WAS EVEN A NATIONAL COMMISSIONER FOR A FEW YEARS BETWEEN STINTS ON THE BENCH. I'M ALSO A FORMER PRESIDENT OF THE DECALOGUE SOCIETY OF LAWYERS, THE OLDEST JEWISH BAR ASSOCIATION IN THE COUNTRY, AND HAVE BEEN ACTIVE IN JEWISH AFFAIRS IN CHICAGO. I HAVE NEVER BEEN CALLED A "KIKE" BEFORE.

THE POST REQUIRED ME TO RECEIVE WHAT IS TERMED A "HOUSE WATCH" FOR A DAY OR TWO. A HOUSE WATCH IS WHERE LAW ENFORCEMENT, IN THIS CASE A CHICAGO POLICE OFFICER, SITS OUTSIDE MY CONDOMINIUM BUILDING ALL DAY AND ALL NIGHT. I ALSO HAD TO HAVE SUCH A HOUSE WATCH ABOUT SIX MONTHS EARLIER IN THE IMMEDIATE AFTERMATH OF THE FIRST FLURRY OF THREATS.

THE HOUSE WATCH REPRESENTED A SIGNIFICANT DIVERSION OF LAW

ENFORCEMENT RESOURCES THAT MIGHT HAVE BEEN BETTER USED FOR THE SUBSTANTIAL INCREASES IN CRIME SWEEPING CHICAGO AT THE TIME. IT ALSO MADE ME FEEL OBLIGED TO CARRY A CONCEALED FIREARM WHERE IT WAS LEGAL TO DO SO, SOMETHING I DO NOT LIKE DOING EVEN THOUGH I HAVE A CONCEALED CARRY LICENSE AND I'M A PRETTY GOOD MARKSMAN.  THE ANTISEMITIC THREAT MADE ME FEEL VULNERABLE AS A JEWISH AMERICAN AND CHANGED THE FEELING OF SECURITY I HAD ALWAYS FELT IN THIS COUNTRY, AND THAT MOST JEWISH AMERICANS WERE JUSTIFIED IN FEELING EVER SINCE GEORGE WASHINGTON'S FAMOUS AUGUST 18, 1790, LETTER TO THE TOURO SYNAGOG IN NEWPORT, RHODE ISLAND.  IN HIS LETTER, PRESIDENT WASHINGTON STATED, "THE GOVERNMENT OF THE UNITED STATES GIVES TO BIGOTRY NO SANCTION, TO PERSECUTION NO ASSISTANCE."

I FEEL AND STILL FEEL THREATENED BY DEFENDANT HUMBER'S TELEGRAM POST AND FEEL SHE IS A DANGER TO AT LEAST THE JEWISH COMMUNITY IN THIS COUNTRY, IF NOT THE COMMUNITY IN GENERAL.

THANK YOU.

THE COURT:  THANK YOU FOR THE STATEMENT.

VICTIM 2.

MR. PERRAS:  YOUR HONOR, VICTIM 2 INFORMED US THIS MORNING THAT SHE IS SICK AND UNABLE TO ATTEND TODAY'S HEARING. SHE HAS ASKED ME TO READ THE FOLLOWING NOTE TO THE COURT.

THE COURT:  YOU MAY.

MR. PERRAS:  "THE THREAT TO MY LIFE AND THE SAFETY OF MY FAMILY CREATED BY THE DEFENDANT HAS BEEN PROFOUND.  I LIVE

WITH A CONSTANT SENSE OF FEAR THAT MY HOME IS NOT SAFE, AND THAT I'M AT RISK IN ANY PUBLIC SPACE BECAUSE SOME UNKNOWN PREDATOR COULD ACT ON THE VICIOUS PROMPTING BY THE DEFENDANT AND HER COCONSPIRATORS.  FOR THESE REASONS, A LENGTHY PERIOD OF INCARCERATION IS WARRANTED."

THE COURT:  ALL RIGHT.

VICTIM 3.  VICTIM 3, WE'LL HEAR YOUR IMPACT STATEMENT AT THIS TIME.

VICTIM 3:  YES.  YOUR HONOR, I'M FEDERAL OFFICIAL NO. 3 IN MS. HUMBER'S INDICTMENT, AND I AM IMPLORE YOU, PLEASE SENTENCE THIS WOMAN AT THE HIGHEST POSSIBLE RANGE OF THE GUIDELINES.  NO DOWNWARD DEPARTURES, NO MITIGATING FACTORS.  I AM REQUESTING THE MAXIMUM PENALTY AND SENTENCE, OR ALTERNATIVELY THE HIGHEST END OF THE RANGE IN THE PLEA AGREEMENT; 30 YEARS OF INCARCERATION, A LIFETIME OF SUPERVISED RELEASE, FINES, SPECIAL ASSESSMENTS, AND THE ENTIRE RESTITUTION REQUESTED FOR THE FULL LOSS CAUSED BY MS. HUMBER'S ADMITTED CRIMINAL CONDUCT.

DO NOT BE FOOLED BY ANY TEARS OR FEIGNED REMORSE NOW.  THIS WOMAN IS A CALCULATING TERRORIST AND A MONSTER.  SHE WAS NOT TAKEN ADVANTAGE OF; SHE WAS A PROUD, PROFESSED RINGLEADER. MS. HUMBER IS DESCRIBED BY THE DOJ AS THE LEADER OF A TRANSNATIONAL TERRORIST GROUP CALLED THE TERRORGRAM COLLECTIVE. ALL OF HER WORK WAS DONE IN THE NAME OF VIOLENT WHITE SUPREMACIST IDEOLOGY.  SHE IS A DOMESTIC TERRORIST AND SHOULD

BE TREATED AS SUCH.  HAD YOU BEEN APPOINTED TO THE BENCH PRIOR TO MS. HUMBER'S ARREST, SHE VERY LIKELY WOULD HAVE PLACED YOU ON HER "HIT LIST" AS WELL.  THE IRONY IS NOT LOST ON ME THAT THE FIRST BLACK WOMAN TO EVER SERVE AS AN ARTICLE III JUDGE IN THE ENTIRE EASTERN DISTRICT OF CALIFORNIA IS NOW RESPONSIBLE FOR SENTENCING THIS HATE-FILLED BIGOT.

I RECEIVED A CALL FROM THE FBI BACK IN LATE AUGUST 2024, AND WAS INFORMED OF MS. HUMBER'S PLOT.  THAT INITIAL PHONE CALL FROM THE FBI SHOOK ME TO MY CORE.  NOT JUST BECAUSE MS. HUMBER WAS ONE -- AND ONE OF HER CODEFENDANTS WERE ABOUT TO BE ARRESTED AND CHARGED, BUT BECAUSE I HAD ALERTED AND WARNED DOJ ABOUT THEM OVER TWO YEARS PRIOR TO MS. HUMBER'S ARREST, AND NOBODY IN DOJ AT THE TIME BELIEVED ME.

ON JANUARY 10TH, 2022, I WAS SWORN IN AS THE UNITED STATES ATTORNEY FOR THE DISTRICT OF MASSACHUSETTS, MAKING ME THE FIRST BLACK WOMAN TO EVER HOLD THAT POSITION IN THE HISTORY OF MASSACHUSETTS AND ALL OF NEW ENGLAND.  IN MAY 2022, I NOTIFIED SEVERAL OF MY DOJ COLLEAGUES ABOUT THE VERY HIT LIST THAT IS THE SUBJECT OF MS. HUMBER'S INDICTMENT.  MY PARTICULAR HIT LIST CARD HAD THE WORDS "HIT LIST" WRITTEN ON IT, REFERRED TO ME AS A RACIAL SLUR -- USING MS. HUMBER'S WORDS, A "NIGGER" -- LISTED MY DOJ TITLE, MY HOME ADDRESS, DISPLAYED SEVERAL DIFFERENT PHOTOGRAPHS OF ME WITH DIFFERENT HAIRSTYLES, AND HAD AN AR-15 ASSAULT RIFLE PROMINENTLY EXHIBITED ALONG THE SIDE OF THE CARD. IT WAS ANYTHING BUT SUBTLE.  YET, MY CONCERNS WERE DISMISSED

AND COMPLETELY IGNORED BY MY COLLEAGUES IN DOJ AT THE TIME.  I WAS THE HIGHEST RANKING MEMBER OF MY OFFICE.  THESE PEOPLE ALLEGEDLY REPORTED TO ME AS THE UNITED STATES ATTORNEY, AND THE UNITED STATES MARSHAL'S SERVICE IN MASSACHUSETTS DID NOT BELIEVE ME AND ACTUALLY TOLD ME I WAS OVERREACTING.  I WAS A VICTIM SEEKING PROTECTION ON BEHALF OF ME AND MY FAMILY AND I WASN'T BELIEVED OR PROTECTED.

UNFORTUNATELY, THIS EXPERIENCE IS FAR TOO COMMON FOR CERTAIN COMMUNITIES WHEN SEEKING HELP FROM THE FEDERAL GOVERNMENT.  I CAME TO THE -- I BECAME THE US ATTORNEY TO HELP CHANGE THAT AND ENDED UP EXPERIENCING IT FIRSTHAND.  LUCKILY, THERE WERE EXCEPTIONAL LAW ENFORCEMENT OFFICIALS FROM THE EASTERN DISTRICT OF CALIFORNIA AND DOJ THAT SAW MY HIT LIST CARD FOR EXACTLY WHAT IT WAS, A KILL LIST AND A CALL TO ACTION TO HAVE ME MURDERED.  NEVERTHELESS, I AM LEFT WITH THE TROUBLING KNOWLEDGE THAT ME AND MY FAMILY WERE UNPROTECTED AND COMPLETELY EXPOSED WHILE THERE WAS LITERALLY A TARGET WITH MY NAME ON IT CIRCULATING AMONG WHITE SUPREMACIST GROUPS ON THE INTERNET.  THANK GOD MY FAMILY AND I WERE NOT HURT OR KILLED DURING THIS TIME.  THIS KNOWLEDGE HAS TURNED TO NEAR CONSTANT FEAR AND ANXIETY.

I REMAIN IN TRUE FEAR FOR ME AND MY FAMILY'S PHYSICAL SAFETY.  EVEN AFTER LEAVING ELECTED OFFICE IN FEDERAL PUBLIC SERVICE, I STILL HAVE AN ALARM SYSTEM SECURING MY HOME.  I HAVE HAD TO WORK TIRELESSLY, ALONE, TO TRY AND SCRUB MY PERSONAL

INFORMATION FROM THE INTERNET.  I AM STILL REQUESTING DOJ'S ASSISTANCE WITH THIS, AND REQUEST FULL AND COMPLETE RESTITUTION REGARDING ALL THE WORK I'VE HAD TO DO.  I DO NOT WANT MY HOME ADDRESS LISTED ON THE INTERNET AND AVAILABLE TO ANYONE.  I HAD TO GET A P.O. BOX AND FIGHT WITH MULTIPLE STATE AGENCIES TO GET THEM TO REMOVE MY HOME ADDRESS ON THEIR WEBSITES.

I'VE HAD TO SPEAK TO MY CHILDREN ABOUT THIS, EXPLAINING TO THEM THAT THERE ARE PEOPLE THAT WANT TO KILL US JUST BECAUSE WE ARE BLACK -- MS. HUMBER -- THAT HATE US SIMPLY BECAUSE OF OUR SKIN COLOR AND ARE CALLING FOR PEOPLE TO HURT ME.  THAT'S MS. HUMBER.  I'VE HAD TO TALK TO THEM ABOUT SAFETY PROTOCOLS, ABOUT ALWAYS HAVING THE ALARM ON AND NEVER ANSWERING THE DOOR, BEING AWARE OF THEIR SURROUNDINGS AND NOTICING ANY STRANGERS IN OUR NEIGHBORHOOD.  EXPLAINING THAT RACISTS AND TERRORIST LIKE MS. HUMBER DO NOT CARE THAT MY FATHER, THEIR GRANDFATHER, IS WHITE AND IRISH, FOUGHT FOR OUR COUNTRY AS A NAVY CORPSMAN IN THE VIETNAM WAR, AND IS A DISABLED COMBAT VETERAN.

THESE ARE NOT CONVERSATIONS I WANT TO BE HAVING WITH MY CHILDREN.  AND BEING A PUBLIC SERVANT SHOULD NOT BE A DEATH SENTENCE.

AS A FORMER ELECTED DISTRICT ATTORNEY, I HAVE SEEN AND EXPERIENCED MURDER, HATE, AND VIOLENCE.  AS A FORMER UNITED STATES ATTORNEY, I UNDERSTAND TERRORISM AND HATE.  IN THESE ROLES, I HAVE COMFORTED AND SPOKEN WITH THOUSANDS OF VICTIMS FROM THE MARATHON BOMBING IN BOSTON TO THE VICTIMS OF WHITEY

BULGER. THERE ARE NO MORE SIGNIFICANT CHARGES THAN MURDER AND TERRORISM. I AM FROM BOSTON, MASSACHUSETTS. WE KNOW SOMETHING ABOUT TERRORISM, MURDER, AND HATE HERE. MY FEARS ARE APPROPRIATE AND WELL PLACED.

ALL OF MY ABOVE-DESCRIBED FEAR, ANXIETY, AND UNNECESSARY WORK, YOUR HONOR, IS BECAUSE OF MS. HUMBER'S ADMITTED INTENTIONAL, CRIMINAL, HATE-FILLED MURDEROUS CONDUCT.

WHEN I HAVE BEEN THE RECIPIENT OF HATE AND VITRIOL AND RECEIVED MULTIPLE CONFIRMED DEATH THREATS, I WAS EITHER AN ELECTED DISTRICT ATTORNEY OR A PRESIDENTIALLY NOMINATED AND US SENATE CONFIRMED UNITED STATES ATTORNEY. IN THOSE ROLES, I WAS A MEMBER OF LAW ENFORCEMENT AND HAD THE PROTECTION OF THE BOSTON POLICE, THE MASS STATE POLICE, THE FBI, AND ALLEGEDLY THE US MARSHAL SERVICE. TODAY, I AM A CIVILIAN. I NO LONGER HAVE SECURITY DETAILS. I DO NOT WORK IN A SECURE FEDERAL BUILDING. MY HIT LIST IS STILL ON THE INTERNET AND MY CHILDREN AND I HAVE NO PROTECTION.

MAKE AN EXAMPLE OF THIS WOMAN. GIVE HER WHAT SHE DESERVES, AT LEAST 30 LONG YEARS. SHE HAS NO RESPECT FOR THE LAW. IT'S TIME FOR YOU TO GIVE HER SOME. LET HER EXPERIENCE THE FEAR AND ANXIETY HER RACIST AND MURDEROUS BEHAVIOR CAUSED. SHE NEEDS TO SEE WHAT IT FEELS LIKE TO BE A DEFENDANT BEING SENTENCED BY A FEDERAL JUDGE. AGAIN, YOUR HONOR, DO NOT BE SWAYED BY ALL THIS NEWFOUND REMORSE OR ANY CLAIMED ACCEPTANCE OF RESPONSIBILITY. USING MS. HUMBER'S OWN WORDS, "KNOW WHAT MUST BE DONE AND MAKE

IT HAPPEN."

THE COURT:  THANK YOU.

VICTIM 4.

VICTIM 4:  THANK YOU, YOUR HONOR, FOR THE OPPORTUNITY TO OFFER THESE REMARKS TODAY.  AND THANK YOU TO THE DEPARTMENT OF JUSTICE ATTORNEYS WHO SAW THIS CASE THROUGH TO THIS POINT, AS WELL AS WITH THE REMAINING CASES INVOLVING TERRORGRAM.

I'VE SPENT THE PAST SEVERAL WEEKS STRUGGLING TO FIND THE RIGHT WORDS TO SAY HERE.  SADLY, THERE IS NO TEMPLATE FOR THIS KIND OF THING.  THERE IS NO AI PROGRAM THAT CAN SPIT OUT POETIC STATEMENTS INTENDED FOR SOMEONE WHO WANTED TO SEE YOU DEAD.

AND SO I TURNED TO FRIENDS, SOME OF WHOM WONDERED WHY I FOUND THIS PROCESS DIFFICULT.  AFTER ALL, THEY SAID, THIS PERSON WAS ENCOURAGING OTHERS TO KILL YOU.  YOU DON'T OWE HER FORGIVENESS OR KINDNESS OR ANYTHING AT ALL, AND SHE DESERVES NOTHING BUT THE PUNISHMENT SHE WILL NOW RECEIVE.  AND I SUPPOSE, IN FACT I KNOW, THEY ARE RIGHT.

BUT FOR ME, THIS REALLY ISN'T ABOUT WHAT YOU DESERVE, DALLAS, IT IS NOT WHAT I DESERVE.  IT IS ABOUT WHAT MY CHILDREN AND THEIR MOTHER, WHOM YOU WOULD HAVE GLADLY LEFT FATHERLESS AND WIDOWED, DESERVE.  AND WHAT WE DESERVE IS THAT TRUTH BE SPOKEN AND JUSTICE BE DONE.  AND JUSTICE ISN'T JUST WHAT HAPPENS WHEN THEY CLOSE THAT CELL DOOR BEHIND YOU.

JUSTICE CANNOT BE PURCHASED AS CHEAPLY AS THAT BECAUSE ITS COST ISN'T MEASURED BY PUNISHMENT, IT'S MEASURED BY

TRANSFORMATION. ANYTHING LESS IS MERELY INCAPACITATION, AND WHILE I MAY HAVE TO SETTLE FOR THAT IN THIS INSTANT, IT ISN'T ENOUGH. JUSTICE REQUIRES THAT YOU OPEN YOURSELF TO MORE THAN JUST A GUILTY PLEA. I APPRECIATE, ON THE ONE HAND, YOUR WILLINGNESS TO BE HELD ACCOUNTABLE FOR YOUR ACTIONS, BUT THIS IS ONLY A PART OF THAT PROCESS.

THE STATE WILL BE SATISFIED WITH YOUR INCARCERATION, AND I MAY HAVE TO BE. BUT WHAT THIS UNIVERSE REQUIRES OF YOU IS MORE EXACTING THAN THAT. WHAT IT REQUIRES OF YOU IS CHANGE.

AND WHAT IT REQUIRES OF ME IS A CERTAIN MEASURE OF FORGIVENESS, WHETHER YOU CHANGE OR NOT. AND I DO NOT MEAN BY THAT THE KIND OF FORGIVENESS THAT LET'S YOU OFF THE HOOK, I MEAN THE KIND THAT ALLOWS ME THE CLOSURE I NEED BUT WILL NEVER OBTAIN IF I CARRY ANGER IN MY HEART.

ANGER AND HATE ARE VERY EASY, DALLAS. TOO EASY. AND I HAVE BEEN DEALING WITH THE HATRED OF FOLKS LIKE YOU FOR A VERY, VERY LONG TIME BECAUSE TERRORGRAM WAS NOTHING IF NOT PAINFULLY UNORIGINAL.

FROM THE TIME MEMBERS OF THE KLAN TRIED TO BLOW UP MY TEMPLE IN 1981, TO THE TIMES MY LIFE WAS THREATENED BY RACIST SUPPORTERS OF DAVID DUKE A DECADE LATER, TO THE COUNTLESS TIMES MY FAMILY WAS DOXED AND NEO-NAZIS CAME TO OUR NEIGHBORHOODS TO DISTRIBUTE THINLY VEILED DEATH THREATS, OR SENT DERANGED VOICE MAILS THREATENING MY DAUGHTERS, THROUGH ALL OF THAT AND MORE I HAVE HAD TO CONTEND WITH THE LIKES OF YOU.

AND IN SOME WAYS I'VE BEEN DEALING WITH YOU MY WHOLE LIFE BECAUSE I POSSESS THE CELL MEMORY OF PEOPLE WHO WERE THE VICTIMS OF RUSSIAN POGROMS, HUNTED AND HATED FOR THEIR ANCESTRY, THEIR ETHNICITY, THEIR RELIGION, PUSHED OUT OF THEIR HOMES TO AN AMERICA WHERE THEY WOULD OCCASIONALLY BE CONFRONTED WITH STILL MORE HATE, WHERE EASTERN EUROPEAN JEWS LIKE MY GREAT-GRANDPARENTS WOULD BE LOOKED AT WITH SUSPICION.

NOW THEIR FEARS AND THEIR RESOLVE HAVE BEEN PASSED DOWN TO ME.  AND ARMED WITH BOTH OF THEM, I INSIST THAT THE SAME FORCES THAT SOUGHT TO HARM THEM AND NOW ME WILL NOT WIN BY CONVINCING ME TO RETURN HATE WITH HATE.  I REFUSE TO HATE.  JUST AS I HAVE NEVER ALLOWED MYSELF TO HATE THOSE OTHERS WHOSE HATRED MY FAMILY AND I HAVE FELT SO MANY TIMES BEFORE.  I CANNOT HATE YOU BECAUSE I KNOW THAT REDEMPTION IS POSSIBLE, EVEN FOR THE MOST BROKEN.

I THOUGHT THAT WAS TRUE EVEN ABOUT THE MAN WHO MURDERED ONE OF MY GOOD FRIENDS WHEN I WAS 11, RIGHT UP UNTIL THE STATE OF TENNESSEE EXECUTED HIM, APPARENTLY NOT AS CONVINCED AS I WAS ABOUT HIS CAPACITY FOR CHANGE.  I BELIEVED IT ABOUT MY OWN FATHER WHOSE ALCOHOLISM MADE MY CHILDHOOD A CONSTANT EMOTIONAL SPIN CYCLE, BUT WITH WHOM I'VE MADE PEACE AS HE ENTERS THE TWILIGHT OF HIS OWN LIFE.

AND I BELIEVE IT NOW ABOUT MYSELF BECAUSE I, TOO, AM SOMEONE WHO HAS CAUSED OTHERS PAIN.  AND ALTHOUGH I, UNLIKE YOU, NEVER WISHED THAT PAIN UPON ANYONE OR INTENDED TO CAUSE

IT, I DID IT ALL THE SAME, AND I WOULD WANT TO BE SEEN AS REDEEMABLE AND REMEMBERED FOR SOMETHING OTHER THAN THE WORST THINGS I EVER DID.  AND I WORK EVERY DAY TO MAKE THAT POSSIBLE.

NOW YOU WILL HAVE TO FIGURE OUT HOW TO DO THAT FOR YOURSELF.  YOU WILL NEED TO DECIDE IF YOU ARE CAPABLE OF SEEING THOSE YOU SOUGHT TO VICTIMIZE AS PEOPLE DESERVING OF LIFE, SECURITY, AND HAPPINESS, LIKE YOU.  IF YOU CAN, YOU MAY YET DEVELOP THE KIND OF WISDOM THAT CAN MAKE YOUR TIME BEHIND BARS REDEMPTIVE.  IF NOT, YOU WILL HAVE WASTED YET ANOTHER OPPORTUNITY TO BECOME FULLY HUMAN, BY WHICH I MEAN TRULY CAPABLE OF APPRECIATING THE BOND YOU SHARE WITH ALL OF US, INCLUDING THOSE OF US YOU WOULD HAVE SEEN MURDERED.

BECAUSE THAT IS THE INTERESTING THING ABOUT HUMANS, DALLAS. UNLIKE OTHER SPECIES, WE HAVE THE CAPACITY FOR SELF-RECOGNITION AND ABSTRACT THOUGHT.  AND THOSE TWO THINGS ARE WHAT ALLOW ME TO SEE US BOTH AS CHILDREN OF GOD, OR OF A RIGOROUS EVOLUTIONARY PROCESS, OR MAYBE BOTH.  I DON'T REALLY KNOW.  THE POINT BEING, I CAN SEE YOU AS ME AND ME AS YOU IN WAYS MY DOG CANNOT WHEN WE WALK AROUND THE NEIGHBORHOOD AND HE ENCOUNTERS OTHER DOGS.  IN THOSE MOMENTS, HE JUST SNIFFS THEM, THEN GOES ABOUT HIS BUSINESS, NOT LIKELY THINKING MUCH ABOUT THEM UNTIL THE NEXT TIME HE SEES THEM, AND SURELY NOT SPENDING LONG HOURS ON THE SOFA RUMINATING ON WHY THAT ONE DOG A FEW DOORS DOWN IS SO AGGRESSIVE.

BUT AS A HUMAN BEING, TO BE ABLE TO SEE ONESELF IN THE

OTHER PLACES UPON US AN OBLIGATION TO ACTUALLY DO SO.  AFTER ALL, IF THAT IS WHAT SEPARATES US FROM OTHERS IN THE ANIMAL KINGDOM, THEN WHO ARE WE TO FAIL AT THAT ONE UNIQUELY HUMAN POTENTIALITY?  IT'S SORTA LIKE WE'VE GOT ONE JOB, DALLAS, BUT FOR A LOT OF YEARS, SO MANY YEARS, YOU HAVE BEEN REFUSING TO SHOW UP AND PUNCH THE CLOCK.

WELL, NOW YOU HAVE A CHANCE TO SHOW UP, AND YOU HAVE A CHANCE TO DISTINGUISH WHAT YOU HAVE DONE FROM THE PERSON YOU ARE.  AND IF THERE IS NO DAYLIGHT BETWEEN THOSE THINGS, IF INDEED YOU ARE MERELY AN UNREPENTANT, BITTER NAZI TERRORIST, AT LEAST THE REST OF US WILL BE PROTECTED FROM YOU AS YOU JOIN A LONG LIST OF LOSERS FROM THE CONFEDERACY TO THE THIRD REICH TO THE ORDER TO ATTOMWAFFEN, WHOSE FANTASIES OF MASTER RACE GLORY HAVE ONCE AGAIN, AS THEY ALWAYS DO, BUMPED UP AGAINST THE INEVITABLE AND EMBARRASSING LIMITATIONS OF YOUR OWN INADEQUACIES.

BUT, HONESTLY, I WISH FOR A HAPPIER AND BETTER ENDING THAN THAT.  I SINCERELY WISH FOR YOU BOTH HEALING AND PEACE.

TODAY, HERE, WITH THESE WORDS, AND WITH THANKS AGAIN TO THIS COURT, I HAVE MANAGED TO OBTAIN AT LEAST A SMALL MEASURE OF MY OWN.

THANK YOU.

THE COURT:  THANK YOU.

ANY OTHER VICTIMS?

MR. PERRAS:  NO, YOUR HONOR.

THE COURT:  AT THIS TIME I'LL HEAR FROM THE GOVERNMENT.

MR. PERRAS:  YOUR HONOR, THE GOVERNMENT IS ASKING FOR A SENTENCE OF 30 YEARS IN PRISON, TO BE FOLLOWED BY A LIFE TERM OF SUPERVISED RELEASE.  SUCH A SENTENCE WOULD BE SUFFICIENT BUT NO GREATER THAN NECESSARY TO SATISFY THE PURPOSES OF SENTENCING OUTLINED IN 18 USC 3553(A).

I'LL BEGIN WITH THE NATURE AND CIRCUMSTANCES OF THE OFFENSES.

YOUR HONOR HAS JUST HEARD ABOUT THE HIT LIST THAT MS. HUMBER AND HER COCONSPIRATORS CREATED THAT TARGETED PUBLIC OFFICIALS FOR ASSASSINATION, INCLUDING SEVERAL OF THE PUBLIC OFFICIALS WHO JUST SPOKE EARLIER TODAY.  I CANNOT MORE ELOQUENTLY DESCRIBE THE IMPACT IT HAD ON THOSE OFFICIALS THAN THEY ALREADY HAVE.  BUT THEY AREN'T THE ONLY CRIMES THAT SHE COMMITTED.

SHE PROVIDED BOMB-MAKING INSTRUCTIONS AND OTHER MATERIAL SUPPORT TO TERRORIST WHO WERE PLOTTING TO COMMIT ATTACKS ON CRITICAL GOVERNMENT INFRASTRUCTURE.  AND SHE SOLICITED INDIVIDUALS TO CARRY OUT BIASED-MOTIVATED MASS SHOOTINGS TARGETING INNOCENT PEOPLE BECAUSE OF THEIR RACE, RELIGION, AND SEXUAL ORIENTATION.

THOSE CRIMES WOULD BE BAD ENOUGH ON THEIR OWN, YOUR HONOR, BUT THIS DEFENDANT COMMITTED THEM IN FURTHERANCE OF HER ULTIMATE GOAL OF IGNITING A RACE WAR, ACCELERATING THE COLLAPSE

OF THE GOVERNMENT, AND CREATING AN ALL WHITE ETHNOSTATE. RATHER THAN TAKE ACTION HERSELF, THIS DEFENDANT GROOMED AND RADICALIZED VULNERABLE TEENAGERS AND THEN MOBILIZED THOSE TEENAGERS TO TAKE ACTION.  AND THEY DID.  SHE WAS SUCCESSFUL.

SHE WAS RESPONSIBLE FOR INCITING A MASS SHOOTING IN BRATISLAVA, SLOVAKIA AT AN LBGT BAR, A MASS STABBING OUTSIDE OF A MOSQUE IN TURKEY, AND A SCHOOL SHOOTING IN ARACRUZ, BRAZIL THAT LEFT TEACHERS AND CHILDREN DEAD.

BECAUSE OF THIS DEFENDANT, INNOCENT MEN, WOMEN, AND CHILDREN AROUND THE WORLD ARE DEAD.

MS. HUMBER HAS HAD A LITTLE OVER A YEAR TO REFLECT UPON HER CRIMES AND SHE'S SHOWN ABSOLUTELY NO REMORSE.  THAT'S NOT MY SPECULATION.  WE KNOW THAT BECAUSE WE'VE READ HER PRISON JOURNAL.  AS THE DEFENDANT ADMITTED IN HER PRISON JOURNAL, HER TIME IN PRETRIAL DETENTION, "HAS ONLY SERVED TO VALIDATE, REINFORCE, AND GALVANIZE" HER BELIEFS.  SHE CONSIDERS HERSELF A "RUTHLESS NEO-NAZI TERRORIST," HER WORDS.  SHE'S PROUD OF HER LEGACY OF DEATH AND DESTRUCTION.  HER ONLY REGRET -- AFTER ALL OF THE THINGS THAT SHE HAS DONE, HER ONLY REGRET IS NOT PERSONALLY MURDERING SOMEONE BEFORE SHE WAS ARRESTED.

IN THE DEFENDANT'S SENTENCING MEMO, MS. OREN WROTE THAT HER CLIENT IS NOT BEYOND HOPE AND IS CAPABLE OF CHANGE.  AND MR. -- VICTIM 4 OFFERED SIMILAR SENTIMENTS.  I SINCERELY HOPE THAT THEY'RE RIGHT.  I SINCERELY HOPE THAT MS. HUMBER CAN FIND SOME WAY TO EXTINGUISH THE HATRED AND BITTERNESS INSIDE OF HER THAT

HAS SO CONSUMED HER FOR MOST OF HER LIFE.

BUT HOPE IS NOT A STRATEGY AND CHANGE IS NOT INEVITABILITY. IN ORDER FOR PEOPLE TO TRULY CHANGE, THEY NEED TO WANT TO CHANGE.  AND MS. HUMBER HAS SHOWN NO INTEREST IN CHANGING HER BELIEFS.  QUITE THE OPPOSITE.  SHE WROTE IN HER JOURNAL HER BELIEFS ARE SOMETHING SHE HAD VOWED TO "LIVE, FIGHT, KILL, AND DIE FOR."  SHE WROTE THAT SHE PRAYS NOT FOR THE STRENGTH TO CHANGE, BUT SHE PRAYS FOR THE STRENGTH TO REMAIN DEFIANT UNTIL THE END, JUST LIKE THE NAZIS THAT SHE SO EMULATES.

IN LIGHT OF THAT REALITY, YOUR HONOR, THE ONLY WAY TO PROTECT THE PUBLIC FROM THIS DEFENDANT WHO HAS SHOWN NO INTEREST IN REHABILITATION OR ABILITY TO BE DETERRED IS TO INCAPACITATE HER THROUGH A LENGTHY PRISON SENTENCE.  AND FOR THOSE REASONS WE ARE ASKING FOR A SENTENCE OF 30 YEARS IN PRISON, TO BE FOLLOWED BY A LIFE TERM OF SUPERVISED RELEASE.

THE COURT:  THANK YOU.

MS. OREN.

MS. OREN:  YOUR HONOR, WE ARE ASKING FOR A SENTENCE OF 25 YEARS.

THE COURT:  ALL RIGHT.

MS. OREN:  AND AS YOU'VE READ IN THE REPORT WE PROVIDED TO YOU, BASED ON THE WORK THAT THE DEFENSE TEAM HAS BEEN DOING WITH MS. HUMBER, SHE HAS HAD HARROWING LIFE EXPERIENCES THAT ARE TRULY HORRIFIC, MORE THAN ONE PERSON SHOULD HAVE TO ENDURE DURING A LIFETIME.

THAT SAID, HER WORK, IN WORKING WITH US AND TALKING TO US, IS THE BEGINNING OF HER UNPACKING THAT TRAUMA.  AND THIS IS, I THINK, REALLY THE WORK THAT VICTIM 4 WAS TALKING ABOUT.  WE ARE ONLY AT THE BEGINNING OF THAT JOURNEY.

THERE IS NOT MUCH MORE FOR ME TO SAY AT THIS TIME.

MS. HUMBER'S FAMILY IS HERE TO SUPPORT HER.

I AM NOT GOING TO GET INTO THE PHYSICAL, EMOTIONAL, AND OTHER FORMS OF ABUSE THAT SHE HAS ENDURED.

I WOULD LIKE TO ADDRESS THE GOVERNMENT'S TWO REQUESTS TO SUPPLEMENT THE CONDITIONS FROM PROBATION.

THE COURT:  WE'LL GET BACK TO THAT.

MS. OREN:  OKAY.

THE COURT:  THE SPECIAL CONDITIONS, THE REQUEST TO BROADEN?

MS. OREN:  THAT'S CORRECT.

THE COURT:  WE'LL COME BACK TO THAT.

MS. OREN:  BUT I HAVE NOTHING FURTHER TO ADD.

THE COURT:  ALL RIGHT.  MS. HUMBER, THIS IS YOUR OPPORTUNITY TO ADDRESS THE COURT.  IS THERE ANYTHING YOU WISH THE COURT TO KNOW BEFORE I IMPOSE A SENTENCE IN YOUR CASE?

AND IF YOU INTEND TO READ, I'LL JUST ASK YOU TO READ A LITTLE BIT SLOWLY THAN YOU NORMALLY WOULD JUST SO THE COURT REPORTER CAN TAKE IT DOWN.

THE DEFENDANT:  OKAY.  YOUR HONOR, I'M COMMITTED TO BETTERING MYSELF THROUGHOUT THIS JOURNEY, USING THIS EXPERIENCE

FOR GOOD, AND MAKING A POSITIVE IMPACT WHEREVER I GO.

I'D LIKE TO TAKE THIS OPPORTUNITY TO APOLOGIZE TO MY PARENTS FOR THE STRESS THIS HAS CAUSED THEM.

MOM, DAD, I LOVE YOU GUYS AND I'M SORRY.  GOD WILLING, YOU'LL BE THERE WHEN I GET OUT OF PRISON AND WE CAN MAKE UP FOR LOST TIME.  BUT NO MATTER WHAT HAPPENS, THANK YOU FOR EVERYTHING.

THE COURT:  ALL RIGHT.  MY RESPONSIBILITY IS TO IMPOSE A SENTENCE THAT IS SUFFICIENT BUT NOT GREATER THAN NECESSARY TO COMPLY WITH THE PURPOSES OF SENTENCE.

I HAVE CONSIDERED ALL OF THE ARGUMENTS PRESENTED TO ME BY COUNSEL, THE STATEMENTS MADE TODAY, CONSIDERED YOUR STATEMENT, MS. HUMBER.  I'VE ALSO CONSIDERED THE SENTENCING GUIDELINES AND TAKEN INTO CONSIDERATION THE 3553(A) FACTORS, AS WELL AS THE IMPACT STATEMENTS.

THE NATURE AND CIRCUMSTANCES OF YOUR OFFENSE ARE HORRIFIC.  YOUR CRIMES ARE SERIOUS AND THEY'RE TROUBLING.  FOR OVER TWO YEARS YOU LED A TRANSNATIONAL TERRORIST GROUP.  MORE SPECIFICALLY, YOU ADMIT TO SOLICITING INDIVIDUALS TO COMMIT HATE CRIMES, TERRORIST ATTACKS ON CRITICAL INFRASTRUCTURE, AND ASSASSINATIONS, AND PROVIDED TECHNICAL INSPIRATIONAL AND OPERATIONAL GUIDANCE TO EQUIP OTHER MEMBERS IN PLANNING, PREPARING FOR, AND SUCCESSFULLY CARRYING OUT THOSE TARGETS.  THOSE MEMBERS INCLUDED TEENAGERS WHO ACTED ON YOUR INSPIRATION AND GUIDANCE WHICH RESULTED IN HARM AND THE MURDER OF INNOCENT

PEOPLE.

YOU HAVE ADVOCATED TRANSNATIONAL VIOLENCE THROUGH PUBLICATIONS, VIDEOS, CHATS, AND MESSAGES, AND INSPIRED AND GUIDED OTHERS TO COMMIT BIAS-MOTIVATED ATTACKS, INCLUDING ATTEMPTED ASSASSINATIONS ON PUBLIC OFFICIALS.

EQUALLY CONCERNING IS YOUR ADMITTED COLLABORATION WITH OTHER MEMBERS TO CREATE A LIST OF PUBLIC OFFICIALS TO TARGET FOR MURDER.  A SIGNIFICANT NUMBER OF PEOPLE WERE PUT IN FEAR FOR THEIR SAFETY AND THE SAFETY OF THEIR LOVED ONES -- WE HEARD FROM SOME OF THEM TODAY -- BECAUSE OF THOSE ACTIONS.  AND TODAY THEY EXPRESSED HOW VULNERABLE THEY STILL FEEL.

THE COURT FINDS TROUBLING YOUR LACK OF REMORSE FOR THESE CRIMES.

THIS COURT, HOWEVER, MUST ALSO TAKE INTO CONSIDERATION YOUR HISTORY AND CHARACTERISTICS, MUCH OF WHICH IS NOT TAKEN INTO ACCOUNT IN CONSIDERATION BY THE GUIDELINES.  YOU HAVE BEEN SUBJECTED TO SEVERE AND EXTREME TRAUMA AND ABUSE THROUGHOUT YOUR CHILDHOOD, BEGINNING AT A VERY YOUNG AGE AND THROUGHOUT ADULTHOOD.  YOU DID NOT DESERVE WHAT HAPPENED TO YOU.  NO ONE DESERVES TO BE VICTIMIZED IN THAT WAY.

I HAVE NO DOUBT THAT THAT SEVERE TRAUMA YOU EXPERIENCED PLAYED SOME PART IN LEADING YOU TO COMMIT THESE CRIMES AND THE HATRED WE'VE HEARD TODAY.

YOU DON'T HAVE AN EXTENSIVE CRIMINAL HISTORY.  YOU SEEM TO HAVE DONE WELL ON COURT SUPERVISION.  LOOKS LIKE YOU COMPLETED

DRUG DIVERSION, DRUG COURT, IN PRIOR CASES, I THINK THAT WAS IN THE STATE SUPERIOR COURT.  I ALSO SEE THAT DURING PRETRIAL YOU'VE BEEN PROGRAMMING AND RECEIVED SEVERAL CERTIFICATES OF COMPLETION.  THAT SHOWS TO ME YOU'RE INTERESTED IN WORKING THROUGH THE TRAUMA THAT YOU'VE EXPERIENCED IN YOUR LIFE AND GAINING COPING SKILLS TO ADDRESS YOUR PAST AND TO ASSIST YOU IN THE FUTURE.

I KNOW YOU HAVE A HISTORY OF SUBSTANCE ABUSE, MENTAL HEALTH ISSUES.  I'VE READ ABOUT THOSE DIAGNOSES.  I KNOW THAT YOU'VE BEEN HOMELESS IN THE PAST.

DESPITE THAT ABUSE AND TRAUMA, I UNDERSTAND YOU GRADUATED AT THE TOP OF YOUR CLASS AND MAINTAINED A STABLE WORK HISTORY FOR SOME TIME.  AS NOTED BY BOTH PARTIES, YOU'VE TAKEN FULL RESPONSIBILITY FOR YOUR ACTIONS AND YOU DID SO RELATIVELY EARLY ON.

NONETHELESS, THE COURT MUST STILL FACTOR IN PUNISHMENT, DETERRENCE, AND PROTECTION OF THE PUBLIC, AMONG THOSE OTHER FACTORS I TALKED TO YOU ABOUT A MOMENT AGO.

THE COURT NOTES THAT WHILE MS. HUMBER ASSERTS THAT A SENTENCE HIGHER THAN 25 YEARS WOULD CREATE AN UNWARRANTED SENTENCING DISPARITY, THE COURT DOESN'T AGREE WITH THAT.  THE INDIVIDUALS THE DEFENSE IDENTIFIES AND COMPARES TO THE DEFENDANT ARE NOT SIMILARLY SITUATED FOR MANY REASONS, INCLUDING THAT THEY WERE PROSECUTED AND SENTENCED IN OTHER COUNTRIES, WITH DIFFERENT CRIMES, DIFFERENT LAWS FOR DIFFERENT

CRIMES AND DIFFERENT CONDUCT.

IT'S IMPORTANT TO NOTE THAT WHILE I'VE TAKEN INTO CONSIDERATION THOSE MITIGATING FACTORS THAT I JUST TALKED ABOUT AND FIND THAT A DOWNWARD VARIANCE IS APPROPRIATE, THEY DO NOT EXCUSE YOUR DISTURBING AND SERIOUS CRIMINAL CONDUCT IN THIS CASE.

PURSUANT TO THE SENTENCING REFORM ACT OF 1984, IT IS THE JUDGMENT OF THE COURT THAT THE DEFENDANT, DALLAS ERIN HUMBER, IS HEREBY COMMITTED TO THE CUSTODY OF THE BUREAU OF PRISONS TO BE IMPRISONED FOR A TERM OF 60 MONTHS OF IMPRISONMENT ON COUNT 1, 60 MONTHS ON EACH OF COUNTS 9, 10, 11, 12, TO RUN CONCURRENT TO ALL OTHER COUNTS, 180 MONTHS ON EACH COUNT OF COUNTS 2, 3, 4, AND 5, TO RUN CONCURRENT TO EACH OTHER BUT CONSECUTIVE TO COUNT 1, 180 MONTHS ON EACH OF COUNT 6, 7, 8, 13, AND 14, TO RUN CONCURRENT TO ALL OTHER COUNTS, AND 120 MONTHS ON COUNT 15, TO RUN CONSECUTIVE TO COUNT 1, FOR A TOTAL TERM OF 360 MONTHS IMPRISONMENT.

YOU MUST PAY A SPECIAL ASSESSMENT OF $1,500, PAYMENT TO BEGIN IMMEDIATELY.

THE COURT FINDS YOU DO NOT HAVE THE ABILITY TO PAY AND IMPOSITION OF A FINE IS WAIVED.

IT'S FURTHER ORDERED THAT MS. HUMBER SHALL PAY RESTITUTION TO THE VICTIMS IN THE AMOUNT OF $8,226.20 AS OUTLINED IN THE RESTITUTION ATTACHMENT TO THE PRESENTENCE REPORT, PAYMENT TO BEGIN IMMEDIATELY.  THE INTEREST IS WAIVED.  RESTITUTION SHALL

BE JOINT AND SEVERAL WITH ANY CODEFENDANT AS LISTED ON THE RESTITUTION ATTACHMENT.  RESTITUTION IS TO BE SENT TO THE CLERK OF THE COURT WHO WILL FORWARD TO THE VICTIMS.

IN ADDITION, THE COURT GIVES NOTICE THAT THIS CASE INVOLVES OTHER DEFENDANTS, OR MAY INVOLVE OTHER DEFENDANTS, WHO MAY BE HELD JOINTLY AND SEVERALLY LIABLE FOR PAYMENT OF ALL OR PART OF THE RESTITUTION ORDERED HEREIN AND MAY ORDER SUCH PAYMENT IN THE FUTURE.  SUCH FUTURE ORDERS DO NOT INCREASE THE AMOUNT OF RESTITUTION ORDERED AGAINST MS. HUMBER.

IF INCARCERATED, PAYMENT OF ANY UNPAID CRIMINAL MONETARY PENALTY IN THIS CASE IS DUE DURING IMPRISONMENT AT THE RATE OF TEN PERCENT OF THE DEFENDANT'S GROSS INCOME PER MONTH OR $25 PER QUARTER, WHICHEVER IS GREATER.  PAYMENT SHALL BE MADE THROUGH THE BOP INMATE FINANCIAL RESPONSIBILITY PROGRAM.

ALL RIGHT.  AS TO THE TERM OF SUPERVISED RELEASE, PURSUANT TO 18 UNITED STATES CODE SECTION 3583(C), BASED ON THE COURT'S INDIVIDUALIZED ASSESSMENT OF MS. HUMBER, THE COURT BELIEVES A TERM OF SUPERVISED RELEASE IS APPROPRIATE.  THAT TERM WILL BE FOR LIFE.  THE REASON FOR THAT IS TO ENSURE THE PROTECTION OF THE PUBLIC, TO SUPERVISE HER TRANSITION INTO THE COMMUNITY FOLLOWING HER INCARCERATION, AND TO PROVIDE OVERSIGHT AND ENSURE YOU RECEIVE NEEDED SERVICES TO REENTER THE COMMUNITY SUCCESSFULLY.  THIS TERM IS SUFFICIENT BUT NOT GREATER THAN NECESSARY TO ADDRESS THE PURPOSES OF IMPOSING SUPERVISED RELEASE ON THE DEFENDANT.

FOR THE RECORD, I JUST WANT TO BREAK DOWN THE -- HOW THAT WORKS OUT FOR THE TERM OF SUPERVISED RELEASE.

UPON YOUR IMPRISONMENT, MS. HUMBER, YOU WILL BE PLACED ON SUPERVISED RELEASE FOR A TERM OF 36 MONTHS, THAT WILL BE AS TO COUNTS 1 THROUGH 14.  I'LL JUST NOTE THAT BECAUSE THE MAXIMUM TERM ON COUNTS 2, 3, 4, 5, 6, 7, 8, 13, AND 14 IS NOT MORE THAN 20 YEARS, AT CLASS C AND D OFFENSES, WHICH HAS A MAX OF 36 MONTHS, AND LIFE ON COUNT 15, AND THAT'S BECAUSE IT QUALIFIES AS A TERRORISM OFFENSE, ALL TO BE SERVED CONCURRENTLY FOR A TOTAL TERM OF LIFE.

WITHIN 72 HOURS OF RELEASE FROM THE CUSTODY OF THE BUREAU OF PRISONS, YOU ARE TO REPORT IN PERSON TO THE PROBATION OFFICE IN THE DISTRICT TO WHICH YOU ARE RELEASED.

WHILE ON SUPERVISED RELEASE, YOU MUST NOT COMMIT ANY OTHER FEDERAL, STATE, OR LOCAL CRIME, AND SHALL NOT ILLEGALLY POSSESS CONTROLLED SUBSTANCES.

YOU MUST COOPERATE IN THE COLLECTION OF YOUR DNA, AS DIRECTED BY THE PROBATION OFFICER, AND COMPLY WITH STANDARD CONDITIONS WHICH HAVE BEEN RECOMMENDED BY THE UNITED STATES SENTENCING COMMISSION AND ADOPTED BY THE COURT.

I WANT TO COME BACK TO MS. OREN ABOUT SPECIAL CONDITIONS.

I'LL JUST NOTE, AS TO THE SPECIAL CONDITIONS, MY UNDERSTANDING IS THE GOVERNMENT IS ASKING TO BROADEN THE SCOPE OF SPECIFICALLY CONDITIONS -- ONE MOMENT -- 4, 5, 6, AND 7. AND I'LL LET MR. PERRAS BE HEARD IF I'M NOT SUMMARIZING THIS

CORRECTLY.

I UNDERSTAND AS TO CONDITION 4 -- SPECIAL CONDITION 4, THE REQUEST IS TO BROADEN THAT CONDITION TO ADD COMMUNICATION -- OR TO PROHIBIT COMMUNICATION WITH ANY INDIVIDUAL, WHETHER OR NOT PART OF A GROUP, WHO PROMOTES OR SOLICITS BIASED-MOTIVATED HATRED OR VIOLENCE.  AND, SECOND, POSSESSION OF ANY MATERIALS THAT PROMOTE OR SOLICIT BIASED-MOTIVATED HATRED OR VIOLENCE.

A QUESTION I HAVE, MR. PERRAS, AS TO THE REQUEST TO BROADEN, THE SUGGESTED LANGUAGE DOESN'T INDICATE WHETHER OR NOT MS. HUMBER WOULD BE -- WHETHER SHE KNOWS THAT THE INDIVIDUAL IS PART OF THIS PARTICULAR GROUP OR HAS THIS PARTICULAR THOUGHT PROMOTING OR SOLICITING BIASED-MOTIVATED HATRED OR VIOLENCE.

MR. PERRAS:  YES, YOUR HONOR.

SO, TO ANSWER THAT, WE WOULD BE COMFORTABLE WITH ADDING, "MS. HUMBER KNOWS TO PROMOTE OR SOLICIT" TO CAPTURE THAT ISSUE.

BUT JUST SPEAKING TO THE BROADER ISSUE, I THINK, YOU KNOW, 20 YEARS AGO, 40 YEARS AGO, I THINK FOCUSING ON GROUP MEMBERSHIP IN A WHITE SUPREMACIST GROUP LIKE THE SKINHEADS OR THE KLAN I THINK WOULD BE AN APPROPRIATE WAY TO PREVENT FOLKS ON SUPERVISED RELEASE FROM CONTINUING TO ENGAGE IN THOSE COMMUNITIES.  I THINK CURRENTLY, GIVEN THAT MS. HUMBER AND OTHERS LIKE HER ARE INTERACTING ON LINE, A LOT OF TIMES IN GROUPS THAT AREN'T REALLY NAMED, THEY'RE KIND OF LOOSE, DECENTRALIZED GROUPS OF PEOPLE, THEY DON'T HAVE NAMES, SOME OF THEM DON'T EVEN CONSIDER THEMSELVES WHITE SUPREMACISTS, THEY

CALL THEMSELVES "ACCELERATIONISTS," WE WOULD JUST SEEK TO FOCUS ON THE CONDUCT -- THE TYPE OF CONDUCT THAT THESE INDIVIDUALS ARE DOING, PROMOTING OR SOLICITING BIASED-MOTIVATED HATRED OR VIOLENCE, RATHER THAN THEIR MEMBERSHIP IN A GROUP.

THE COURT:  MS. OREN.

MS. OREN:  I ALSO SHARE YOUR CONCERN ABOUT THE NOTICE ISSUE WITH RESPECT TO SPECIAL CONDITION NUMBER 4.  THE WAY IT'S WRITTEN, IT WOULD VIOLATE DUE PROCESS AND IT'S VOID FOR VAGUENESS.

I MEAN, PART OF THE CONCERN HERE IS ALSO POSSESSION OF ANY MATERIALS THAT PROMOTE OR SOLICIT BIASED-MOTIVATED HATRED OR VIOLENCE.  LIKE, WHERE DOES THAT END?  DOES THAT INCLUDE THE CATCHER IN THE RYE BY J.D. SALINGER?  LIKE, THIS IS INCREDIBLY BROAD.

OUR CONCERN WITH PART ONE HAD TO DO WITH NOTICE.  I MEAN, HOW WOULD SHE KNOW WHETHER THESE INDIVIDUALS ARE GOING TO BE PROMOTING OR SOLICITING BIASED-MOTIVATED HATRED OR VIOLENCE?

THE COURT:  ALL RIGHT.  SUBMITTED?

MR. PERRAS:  JUST, YOUR HONOR, ONE THING TO CLARIFY.

ON THE POSSESSION OF THE MATERIALS, YOUR HONOR, THAT HAS BEEN UPHELD IN CASES THAT WE'VE CITED IN OUR -- IN OUR MEMO. AND I WILL SAY THAT MS. HUMBER WAS ESSENTIALLY A REPOSITORY FOR ACCELERATIONIST/TERRORIST/WHITE SUPREMACIST LITERATURE AND OTHER STUFF, WHICH SHE THEN DISSEMINATED BROADLY ON LINE TO OTHER PEOPLE TO ATTEMPT TO INCITE THEM TO TAKE ACTION.  SO WE

DO THINK THIS IS AN IMPORTANT COMPONENT OF HER SUPERVISED RELEASE SO SHE NO LONGER HAS THE ABILITY TO DO THAT.

THE COURT:  ALL RIGHT.  IT'S SUBMITTED?

MR. PERRAS:  YES, YOUR HONOR.

THE COURT:  ALL RIGHT.  AS TO THIS SPECIAL CONDITION, CLEARLY I SHARE THE CONCERN ABOUT THE NOTICE PIECE THAT MS. OREN RAISED.  I THINK WITH MODIFICATION AS INDICATED, THAT DEFENDANT -- WHO DEFENDANT KNOWS PROMOTES OR SOLICITS BIASED-MOTIVATED HATRED OR VIOLENCE, THAT WILL ADDRESS THAT ISSUE SO I WILL MAKE THAT MODIFICATION.

I DO SEE A SUFFICIENT NEXUS AND FIND IT REASONABLE AS TO THE REMAINDER OF THE REQUEST AND WILL ADOPT THE REQUEST TO BROADEN SPECIAL CONDITION NUMBER 4 AS TO THAT ISSUE.

ON SPECIAL CONDITIONS 5 THROUGH 7, MY UNDERSTANDING IS THAT THE GOVERNMENT IS ASKING THAT THOSE CONDITIONS BE MODIFIED TO RESTRICT MS. HUMBER FROM USING THE INTERNET ENTIRELY, NOT JUST ANY INTERNET-CONNECTED DEVICE, WITHOUT THE PRIOR APPROVAL OF HER PROBATION OFFICER.

I'LL HEAR FROM MS. OREN ON THAT.

MS. OREN:  OUR CONCERN ABOUT THIS IS THAT IT'S JUST AN IMPOSSIBLE CONDITION FOR HER TO BE ABLE TO FUNCTION IN THE WORLD.  SUPERVISED RELEASE SHOULD BE A TIME FOR REHABILITATION.  AS WELL, IT'S NOT SUPPOSED TO BE PUNITIVE.  AND HOW IS SHE SUPPOSED TO PAY FOR ITEMS AT A GROCERY STORE, LOOK AT A MAP TO GET FROM POINT A TO POINT B, APPLY FOR A JOB?  SHE WOULD NOT BE

ABLE TO FUNCTION IN OUR SOCIETY WITHOUT ACCESS TO THE INTERNET.

THE COURT:  THANK YOU.

I'LL HEAR FROM MR. PERRAS.

MR. PERRAS:  YOUR HONOR, I APPRECIATE THE DIFFICULTIES THAT THIS WOULD -- WOULD HAVE -- MS. HUMBER WOULD HAVE WITH THESE CONDITIONS, BUT I THINK SHE HAS PRETTY MUCH EARNED THEM OVER THE PAST TWO DECADES.

I THINK THE CHALLENGE WITH NUMBER 5 AS CURRENTLY WRITTEN IS IT SUGGESTS THAT IF MS. HUMBER HAS PERMISSION FROM HER PROBATION OFFICER TO USE A PARTICULAR DEVICE, WHETHER IT'S HER PHONE OR HER COMPUTER, THERE IS VERY LITTLE SAFEGUARDS FOR PREVENTING HER FROM ACCESSING TELEGRAM AND OTHER DIGITAL EXTREMIST COMMUNITIES AND INCITING PEOPLE TO VIOLENCE.  A LOT OF THE WORK THAT SHE DID WAS THROUGH HER CELLPHONE, THROUGH HER COMPUTER.  AND MONITORING SOFTWARE CAN MONITOR THAT IF THERE ARE ACTUALLY PEOPLE WHO ARE ABLE TO MONITOR 24/7, IF THAT'S SOMETHING THAT'S ACTUALLY BEING DONE, BUT IT'S NOT A PREVENTION TOOL.  AND GIVEN THAT SHE HAS INCITED THE MURDERS OF INNOCENT PEOPLE AROUND THE WORLD, I THINK THERE IS A SUFFICIENTLY SERIOUS RISK.  AND GIVEN THAT SHE HAS VOWED IN HER JOURNAL THAT SHE -- WE GOT FROM HER IN PRISON VOWED TO CONTINUE DOING THAT FOR THE REST OF HER LIFE, I THINK THERE IS A SUFFICIENTLY SERIOUS DANGER TO JUSTIFY A LIFETIME INTERNET BAN WITHOUT PERMISSION OF HER PROBATION OFFICER.  AND WE HAVE CITED CASES IN SUPPORT OF THAT POSITION IN OUR SENTENCING MEMO.

THE COURT:  ALL RIGHT.  THANK YOU.

IS IT SUBMITTED?

MS. OREN:  SUBMITTED, YOUR HONOR.

THE COURT:  ALL RIGHT.  I DO RECOGNIZE THE CONCERNS RAISED BY MS. OREN.  ADDITIONALLY, I THINK THERE IS A NEXUS AND IT'S REASONABLE FOR THIS CONDITION.  HOWEVER, THERE MAY BE SOME CONCERNS WITH WORK, FOR EXAMPLE.

AND SO WHAT I'LL NOTE IS THAT THIS -- SHE CAN -- MS. HUMBER CAN RECEIVE APPROVAL FROM HER PROBATION OFFICER.  THE COURT CAN ALSO MODIFY THESE CONDITIONS ONCE SHE'S RELEASED.  AND IF THERE IS SOME CONCERN ABOUT HER ABILITY TO FUNCTION IN LIFE BECAUSE OF THIS CONDITION WHEN WE'RE AT, YOU KNOW, 30 YEARS FROM NOW, THE COURT WILL ASSESS THAT.

SO AT THIS TIME I AM GOING TO GRANT THE REQUEST TO BROADEN. THE COURT IS GOING TO --

ANY OTHER ISSUES?  I THINK THAT ADDRESSED ALL OF THE SPECIAL CONDITIONS THAT THE GOVERNMENT WAS SEEKING TO BROADEN.

MS. OREN:  THAT DOES, YOUR HONOR.

THE COURT:  ALL RIGHT.  THE COURT ADOPTS THE SPECIAL CONDITIONS AS MODIFIED JUST NOW ON THE RECORD.  THE REMAINDER THAT I DIDN'T MODIFY ARE ADOPTED AS LISTED AND I IMPOSE THOSE AS WELL.

PROBATION OFFICER:  YOUR HONOR.  SORRY.  JULIE BESABE WITH PROBATION.

I JUST WANT TO MAKE SURE I UNDERSTAND.  MODIFICATION OF

SPECIAL CONDITION NUMBER 5 WILL READ, "YOU MUST NOT POSSESS OR USE A COMPUTER OR ANY DEVICE THAT HAS ACCESS TO ANY ON LINE COMPUTER SERVICE," CORRECT?

THE COURT:  "WITHOUT THE PRIOR APPROVAL OF PROBATION OFFICER."

PROBATION OFFICER:  SO WE WILL KEEP THAT PORTION?

THE COURT:  YES.

PROBATION OFFICER:  THEN WILL WE STRIKE THE REMAINDER OF THAT, SO THE SECOND SENTENCE, AND THEN STRIKE SPECIAL CONDITION NUMBERS 6 AND 7?

THE COURT:  GIVE ME ONE MOMENT.

MR. PERRAS.

MR. PERRAS:  MAY WE BE HEARD ON THIS?

I THINK THAT WOULD ACTUALLY NARROW THE SCOPE OF THE SPECIAL CONDITION.  SO THE GOVERNMENT'S CONCERN IS THAT THE FOCUS -- THE VERB IS BASICALLY POSSESSION OF A DEVICE RATHER THAN USE OF THE INTERNET.  SO WE'RE SEEKING THAT SPECIAL CONDITION THAT THE DEFENDANT MUST RECEIVE APPROVAL FROM HER PROBATION OFFICER OR THE COURT TO USE THE INTERNET, PERIOD.  ANY PARTICULAR TIME SHE WANTS TO USE THE INTERNET.  IF THERE IS A GOOD REASON FOR IT, THIS COURT HAS SAID THE COURT WILL RECONSIDER IT, IF IT IS FOR HER JOB OR SOMETHING LIKE THAT.  BUT I THINK FOCUSING ON POSSESSION OF THE DEVICE REALLY REMOVES THE TEETH OF THIS PROVISION.

THE COURT:  ALL RIGHT.  SO AS TO 6 AND 7, IT SEEMS

MS. HUMBER WILL STILL HAVE AN ABILITY TO USE THE INTERNET IF APPROVED BY HER PROBATION OFFICER, AND SO IT SEEMS LIKE 6 AND 7 SHOULD REMAIN.

I'LL HEAR FROM COUNSEL IF YOU DON'T AGREE.

MR. PERRAS:  THE GOVERNMENT AGREES, YOUR HONOR.

THE COURT:  DOES THAT ANSWER THE QUESTION, OFFICER?

PROBATION OFFICER:  YES, TO SPECIAL CONDITIONS 6 AND 7.  HOWEVER, I'M UNSURE IF THE GOVERNMENT IS WISHING TO CHANGE THE LANGUAGE IN SPECIAL CONDITION 5.

MR. PERRAS:  YES.  THE GOVERNMENT IS REQUESTING THAT THE LANGUAGE READ SOMETHING TO THE EFFECT OF, "YOU MUST NOT USE THE INTERNET UNLESS APPROVED BY THE PROBATION OFFICER."

THE COURT:  I THINK THAT WOULD CAPTURE WHAT THE COURT JUST ORDERED.

PROBATION OFFICER:  THANK YOU.

THE COURT:  ALL RIGHT.

NEXT I WANT TO DISCUSS THE -- IF THERE IS A REQUEST REGARDING HOUSING.  I UNDERSTAND THAT MS. HUMBER WAS INTERESTED IN A PARTICULAR PROGRAM INVOLVING ANIMALS, BUT THAT PROGRAM SEEMS TO BE NOT AVAILABLE.

I'LL HEAR FROM YOU, MS. OREN.

MS. OREN:  WE WOULD REQUEST PLACEMENT AT WASECA.

THE COURT:  AT THIS TIME, I UNDERSTAND THAT JUST BASED ON CLASSIFICATION SHE LIKELY WOULDN'T BE PLACED THERE. THE COURT, OF COURSE, WILL NOTE THAT THERE IS A RECOMMENDATION

FOR THAT; HOWEVER, THAT IS AS LONG AS IT ACCORDS WITH THE SECURITY CLASSIFICATION AND SPACE AVAILABILITY.

ALL RIGHT.  ANYTHING ELSE REGARDING HOUSING, MS. OREN?

MS. OREN:  NO, YOUR HONOR.

THE COURT:  ALL RIGHT.  PROGRAMMING?

MS. OREN:  WE WOULD REQUEST RDAP, YOUR HONOR.

THE COURT:  ALL RIGHT.  GOVERNMENT LIKE TO BE HEARD ON THAT?

MR. PERRAS:  THE GOVERNMENT EXPECTS, BASED ON CONVERSATIONS WITH BOP OFFICIALS, THAT THERE WILL BE CERTAIN RESTRICTIONS PLACED ON THIS INMATE GIVEN THAT SHE'S BEEN CONVICTED OF TERRORIST-RELATED CRIMES.  AND SO THE GOVERNMENT HAS NO OBJECTIONS TO ANY PARTICULAR PROGRAMS PROVIDED THAT THEY ARE CONSISTENT WITH WHATEVER RESTRICTIONS BOP PLACES ON HER.

THE COURT:  ALL RIGHT.  THE COURT AGREES.  AND IF MS. HUMBER WOULD LIKE TO PARTICIPATE IN THAT, I'D RECOMMEND SHE BE GIVEN THE OPPORTUNITY TO DO THAT.

ALL RIGHT.  I DON'T BELIEVE THERE ARE ANY REMAINING COUNTS.

AS PART OF THE PLEA AGREEMENT, MS. HUMBER, YOU WAIVED YOUR RIGHT TO APPEAL AND COLLATERALLY ATTACK ANY PART OF YOUR PLEA AND SENTENCE IN THIS CASE.  HOWEVER, IF YOU THINK THAT WAIVER IS NOT VALID OR DOES NOT APPLY TO THE MATTERS YOU WISH TO APPEAL, YOU ARE ADVISED THAT IF YOU WISH TO APPEAL FROM THIS SENTENCE I JUST IMPOSED, YOU MUST FILE A WRITTEN NOTICE OF APPEAL WITHIN 14 DAYS OF TODAY'S DATE.  IF YOU CAN'T AFFORD AN

ATTORNEY IN CONNECTION WITH THAT APPEAL, ONE WILL BE APPOINTED TO YOU.

ALL RIGHT.  COUNSEL, LET ME JUST MAKE SURE I TOUCHED ON EVERYTHING ON MY END.

IT LOOKS LIKE WE HAVE.

ANYTHING ELSE BEFORE WE CONCLUDE FOR TODAY?

MR. PERRAS:  NOTHING FURTHER FROM THE GOVERNMENT, YOUR HONOR.

THE COURT:  MS. OREN?

MS. OREN:  NO, YOUR HONOR.  THANK YOU.

THE COURT:  ALL RIGHT.  I THINK THAT CONCLUDES.

I'LL JUST NOTE, MS. HUMBER, YOU INDICATED YOU'RE COMMITTED TO BETTERING -- YOU INDICATED TODAY TO THIS COURT YOU'RE COMMITTED TO BETTERING YOURSELF.  PEOPLE SAY A LOT OF THINGS BEFORE THIS COURT WHEN THEY'RE AT SENTENCING.  I HOPE THAT YOU DO TAKE THAT INTO ACCOUNT.  YOU'LL HAVE THE OPPORTUNITY TO DO SO.  IT WILL BE UP TO YOU TO MAKE THAT CHANGE.

ALL RIGHT.  HEARING NOTHING ELSE THEN THE HEARING IS CONCLUDED FOR TODAY.  THANK YOU.

THE CLERK:  COURT IS IN RECESS.

(PROCEEDINGS ADJOURNED, 10:48 A.M.)

---OOO---

I CERTIFY THAT THE FOREGOING IS A CORRECT TRANSCRIPT FROM THE

RECORD OF PROCEEDINGS IN THE ABOVE-ENTITLED MATTER.



                          /S/ KIMBERLY M. BENNETT
                          KIMBERLY M. BENNETT
                          CSR NO. 8953, RPR, CRR, RMR